**A. Lee PETERSEN, Appellant,**

v.

**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellee.**

**No. S–3327.**

Supreme Court of Alaska.

Dec. 14, 1990.

these suits even when the newspaper loses.

Peter M. Page, Juneau and A. Lee Petersen, Anchorage, for appellant.

Andrew Guidi, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE and COMPTON, JJ.

## OPINION

MATTHEWS, Chief Justice.

This case involves a $100,000 life insurance policy issued by Mutual Life Insurance Company of New York (MONY) on November 30, 1983, to A. Lee Petersen, on the life of his business associate Edward Burke. Burke died of a ruptured aorta on May 23, 1984. Soon after Burke's death, Petersen submitted a request for payment to MONY. On September 13, 1984, MONY notified Petersen that his claim was denied because, according to its investigation, Burke had failed to disclose in the policy application that: 1) he had been treated for a self-inflicted wrist wound; 2) he had been a member of the Alcoholics Anonymous treatment program; and 3) he had been treated for chest pains.

On December 27, 1985, Petersen brought suit against MONY in superior court, alleging breach of contract and tortious bad faith. After trial, the jury returned a verdict in favor of MONY. Petersen appeals raising five main issues.

I.

First, Petersen argues that the trial court erroneously disallowed his pursuit of tort causes of action.

Specifically, Petersen contends that the trial court committed reversible error by dismissing his bad faith causes of action from the complaint upon MONY's motion for partial summary judgment. He further contends that it was reversible error for the trial court to deny his motion for leave to file a second amended complaint that alleged seven tort theories, including bad faith and negligence in MONY's handling of the insurance application and subsequent claim. Last, Petersen argues that it was reversible error for the trial court to prevent his pursuit of tort causes of action by denying his motion to amend the pleadings to conform to the evidence.

In denying Petersen's motion to amend the pleadings to conform to the evidence, Judge Gonzalez reasoned that he had heard insufficient evidence to support a cause of action for negligence. Judge Gonzalez concluded that the case was solely a breach of contract action.

Support for the denial of Petersen's tort claims is found in the jury's special verdict, which states in relevant part:

## PART I

Is it more likely than not that misrepresentations, omissions, concealment of facts, or incorrect statements were *knowingly* made in the application for insurance policy on the life of Edward A. Burke, which were *material* to the defendant's acceptance of the risk and the insurer in good faith would not have issued the policy?

YES X

NO _

If the answer is "NO", you must find for the plaintiff and make a finding concerning damages in PART III.

If the answer is "YES" you must answer PART II.

## PART II

Is it more likely than not that the material misrepresentations, omissions, concealment of facts or incorrect statements were the result of defendant's failure to deal with plaintiff fairly and in good faith?

YES _

NO X

(Emphasis added).

Hence, the jury found that misrepresentations, omissions, concealment of facts, or incorrect statements were knowingly made in the application and that such misrepresentations were material to MONY's decision to accept the risk and issue the policy. The jury further determined that the misrepresentations were not due to any lack of fair dealing or lack of good faith by MONY.

This factual determination is supported by the evidence.[1] It defeats any tort claims Petersen might have made.[2] Any error in not allowing him to present his tort theories did not prejudice him.

## II.

Second, Petersen argues that evidence of Burke's suicide attempt and alcoholism were not relevant and should not have been admitted at trial. Petersen maintains that the evidence was not relevant since: 1) Burke's death due to a ruptured aorta was not causally related to his alleged suicide attempt or alleged alcoholism; 2) MONY did not assume the risk of death by suicide; and 3) MONY did not directly ask about suicide attempts in the insurance application. We address each in turn.

■ First, assuming Burke's death was not related to his suicide attempt or alcoholism, this would not render such evidence irrelevant. The question is whether MONY would have issued the policy if it were aware of the suicide attempt or alcoholism. If such information would have altered the underwriting decision to accept the risk of Burke's death, it is relevant to MONY's claim of rescission.[3]

The application process was sufficient to elicit facts indicating Burke's alcoholism and suicide attempt, if Burke had answered fully and truthfully. There is evidence that MONY would not have issued a policy on Burke's life if it had been informed of his alcoholism and suicide attempt. Hence, the evidence of Burke's suicide attempt and alcoholism is relevant to MONY's claim for rescission and was properly admitted by the trial court.

■ Next, Petersen argues that evidence of Burke's suicide attempt was not relevant because MONY did not assume the risk of death by suicide. It is true that the policy contained an exclusion in the event of a death by suicide within two years of its issuance; however, this does not render the evidence of attempted suicide wholly irrelevant.

It remains that if MONY had been apprised of the facts involving the suicide attempt it claims that it would not have issued the policy. MONY notes that the suicide exclusion does not provide it complete protection. It would still run the risk

---

1. See our discussion of the trial court's denial of Petersen's motion for a directed verdict at § IV, *infra.*

2. Any alleged bad faith on the part of MONY in handling the claim (as opposed to issuing the policy) is rendered irrelevant by the jury's finding that MONY would not have issued the policy in the first place but for Burke's knowing and material "misrepresentations, omissions, concealment of facts, or incorrect statements" on the application. Petersen cannot now complain about MONY's alleged bad faith in handling the claim where it arose under a policy procured by activity which itself amounts to bad faith. For the same reason, the jury's findings defeat Peter-

sen's claims of negligent processing of the application, negligent processing of the claim, and breach of the fiduciary duty created by the contract.

3. Materiality is defined by the risk assumed at the time the policy is issued not by a hindsight causal analysis of the subsequent death. *See Wickersham v. John Hancock Mut. Life Ins. Co.,* 413 Mich. 57, 318 N.W.2d 456, 458–59 (1982); *Robinson v. Reliable Life Ins. Co.,* 569 S.W.2d 28, 30 (Tex.1978) (en banc) (the materiality of a misrepresentation must be viewed as of the time of the issuance of the policy, rather than at the time the loss occurred); *Cohen v. Penn Mut. Life Ins. Co.,* 48 Cal.2d 720, 312 P.2d 241, 244 (1957).

of a death by suicide after the two-year exclusion period. Further, in the case of a death under suspicious circumstances within two years, MONY would risk having to make payment of the death benefit if it were unable to prove the death was a suicide. It is not unreasonable to believe that MONY would not have insured Burke's life had he truthfully answered the application questions to reveal his treatment for the suicide attempt. The suicide exclusion did not eliminate all risks assumed by MONY that were related to death by suicide. Thus, evidence of Burke's suicide attempt was relevant.

■ Third, Petersen maintains evidence of the suicide attempt was irrelevant because MONY did not directly ask about suicide attempts in the application. Although direct inquiries about suicide were not made in the insurance application, sufficient inquiries were made that if answered fully would have revealed the suicide attempt. Burke was asked whether he had been treated for mental or emotional trouble, or whether he had experienced mental or nervous disorders. He was also requested to list doctors and hospitals he had visited in the previous five years.

In spite of these requests, Burke failed to reveal that he was treated for a self-inflicted wrist wound at Humana Hospital and had his wounds sutured by Dr. Dickey. Burke also failed to reveal that he had an examination at Alaska Psychiatric Institute and was seen by staff psychiatrist John Chatel as a precaution after his suicide attempt. If Burke had been truthful, the application questions were sufficient to bring his attempted suicide to MONY's attention.

■ In light of the facts and circumstances set forth above, we are not left with a definite and firm conviction that the trial court erred in admitting the evidence of Burke's suicide attempt or alcoholism.[4]

### III.

■ Petersen, in cursory fashion, challenges the jury instructions given by the trial court. In his brief, Petersen does little more than cite his proposed instruction and state it was not given, without any substantive legal argument to support his assertions.

Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Fairview Development, Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970) *cert. denied*, 402 U.S. 901, 91 S.Ct. 1374, 28 L.Ed.2d 642 (1971). Hence, Petersen's asserted errors concerning jury instructions should be deemed abandoned.

### IV.

■ Petersen contends it was reversible error for the trial court to deny his motion for a directed verdict. The proper standard of review of a motion for a directed verdict is not to weigh conflicting evidence or judge the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment. *Dura Corp. v. Harned*, 703 P.2d 396, 402 (Alaska 1985). The test is objective; and if there is room for diversity of opinion among reasonable people, the question is one for the jury. Further, all favorable inferences are to be accorded the non-moving party. *Id.*

■ The evidence here, viewed in the light most favorable to the non-moving party, supports Judge Gonzalez' denial of Petersen's motion for a directed verdict.

Here, Ms. Steele, MONY's field underwriter who handled Burke's application,

---

4. The standard for appellate review of a trial court's decision on admissibility of evidence is whether the court abused its discretion. *Hutchins v. Schwartz*, 724 P.2d 1194, 1197 (Alaska 1986); *Dura Corp. v. Harned*, 703 P.2d 396, 409 (Alaska 1985). We will find that a trial court abused its discretion only "when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982).

testified that Burke did not reveal his history of chest pain[5] even though chest pain was one of the symptoms explicitly asked about in the application.

Further, there was evidence that Burke was a member of Alcoholics Anonymous for eight years before applying for the life insurance. Petersen himself testified that Burke described himself as a recovering alcoholic. However, Ms. Steele testified that she was not informed in the application process that Burke was a member of Alcoholics Anonymous or that he may have been an alcoholic, even though it was pertinent to questions on the application.[6]

Last, there was evidence that Burke was treated for a self-inflicted wrist wound at Humana Hospital where his wounds were sutured by Dr. Dickey. The evidence shows that Burke was further treated at Alaska Psychiatric Institute by Dr. Chatel. In answering the pertinent application questions Burke did not reveal the treatment related to his suicide attempt.[7] In light of the foregoing, viewed in the light most favorable to MONY, the non-moving party below, we cannot say that Judge Gonzalez erred in denying Petersen's motion for a directed verdict.

## V.

■ Petersen argues it was error for the trial court to exclude testimony by Burke's ex-wife on the issue of Burke's alleged alcoholism. The court ruled that the relevant period of time for evidence about Burke's use of alcohol was after 1975. Since Burke's ex-wife divorced him in 1975, the court determined her testimony about his alcohol use was too remote in time to be relevant. In his main brief, Petersen raised no argument as to why the trial court erred in excluding this testimony.[8]

Rather, Petersen raised this argument for the first time on appeal in his reply brief. Since Petersen has failed to argue this issue in his main brief, it is waived. *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n. 4 (Alaska 1982).

For the foregoing reasons, we AFFIRM.

MOORE, J., not participating.

■

**5.** MONY's investigation revealed, and Petersen does not dispute, that Burke had been treated for chest pain by Dr. Billings in October 1982, thirteen months before his application for insurance was completed. In addition, Dr. David Henry testified that Burke visited him on January 16, 1984, at which time Burke complained of chest and shoulder pains and told Henry that they had been going on intermittently for three or four months.

**6.** Burke's responses to the pertinent questions are as follows:
   *Part II, Question 3(m):* "Have you ever had any known indication of, or been treated for ... *alcoholism* or drug habit?" Answer: "No"
   *Part I, Question 22(c):* Has Burke "during the past 5 years been treated by a physician, counselor, psychologist, hospital or clinic for mental or emotional trouble, neurological disorder or the use of *alcohol* or drugs?" Answer: "No"
   (Emphasis added).

**7.** *Part II, Question 2:* "List all doctors, clinics or hospitals you have visited in the last 5 years for examination, treatment or consultation."
Burke listed Norton Sound Medical Center and Dr. Billings, for treatment of high blood pressure. He did not mention: 1) Humana Hospital; 2) Dr. Dickey; 3) Alaska Psychiatric Institute; or 4) Dr. Chatel.
   *Part I, Question 22(b):* Has Burke "during the past 5 years had any illness, surgery or injury requiring treatment by a physician, hospital or other medical facility?" Answer: "No"
   *Part I, Question 22(c):* Has Burke "during the past 5 years been treated by a physician, counselor, psychologist, hospital or clinic for mental or emotional trouble, neurological disorder, or the use of alcohol or drugs?" Answer: "No"

**8.** Although in his main brief Petersen does mention that the trial court refused to allow this testimony, he fails to advance any *legal argument* as to why the court erred.