**Stanley VASKA, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6312.

Court of Appeals of Alaska.

April 3, 1998.

Margi Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

COATS, Chief Judge.

Stanley Vaska was convicted, following a jury trial, of sexual abuse of a minor in the first degree, an unclassified felony with a maximum sentence of thirty years of imprisonment, and sexual abuse of a minor in the second degree, a class B felony. AS 11.41.434(a)(1); AS 11.41.436(a)(2). Superior Court Judge Dale O. Curda sentenced Vaska to a composite sentence of forty years with fifteen years suspended. Judge Curda placed Vaska on probation for a period of ten years following his release from confinement. Vaska appeals his conviction to this court. We remand.

Vaska contends that Judge Curda erred in refusing to recuse himself and to set aside his rulings and the verdict in this case. Some factual background is necessary to understand Vaska's claim. In the middle of March 1996, around the time of Vaska's trial, the case of *State v. Jones*, No. 4BE–S92–1258CR, was scheduled for trial before Judge Curda. A few days before the *Jones* trial was to commence, Bethel District Attorney Jake Metcalfe became concerned that pre-trial motions had not been decided in *Jones*. Metcalfe encountered Debran Rowland, Judge Curda's law clerk, in the courthouse and asked about the motions. Rowland told Metcalfe to "stop nagging her." Within twenty-four hours, Metcalfe received a copy of a confidential bench memorandum from Rowland to Judge Curda; this memorandum discussed a pre-trial motion in the *Jones* case. Rowland attached a sticky note to the memorandum which stated the following:

> FYI—Just so you know how great a friend you have here—This is an indication of the battles I take on for you guys (and, of course, for the law). It is also part of the reason decisions take so fucking long. When you reason w/o the law, you can say anything. The point is to do it right. So, quit nagging, and don't ever cross me, or I'll get you.
>
> P.S. FOR YOUR EYES ONLY!!!

About two weeks later, on April 3, 1996, Metcalfe informed Judge Curda of the note and memorandum he received from Rowland. At the same time, Metcalfe provided the court with documents indicating that Rowland had had sexual relations with a Bethel assistant district attorney. The record does not disclose the identity of Rowland's sexual partner.[1]

Vaska's attorney was apprised of these facts in mid-May, 1996, almost two months after the jury verdict in Vaska's case. Vaska filed a motion to set aside the verdict and to assign a new judge to his case. Vaska argued that Rowland was biased in favor of the state, and that this bias either tainted Judge Curda's rulings or at least gave rise to a reasonable appearance that the judge's rulings were tainted.[2] Judge Curda denied this

---

1. Apparently Metcalfe informed Judge Curda of the identity of the assistant district attorney with whom Rowland had the sexual relationship.

2. The state claims that Vaska's motion was based solely on Rowland's sexual involvement with an assistant district attorney and not on Rowland's *ex parte* communication with Metcalfe. We disagree. While Vaska did not mention the *ex parte* communication in his original motion, Vaska

motion, stating in part that he had independently reviewed his pretrial rulings and that he reaffirmed each one. On July 25, 1996, Superior Court Judge Richard D. Savell affirmed Judge Curda's ruling. *See* AS 22.20.020(c). On appeal, Vaska claims that Judge Curda erred in refusing to recuse himself and to set aside the verdict based upon the misconduct of his law clerk and the appearance of unfairness which the law clerk's actions created. Vaska does not claim that Judge Curda himself was biased.

Although this appears to be an issue of first impression in Alaska, several federal courts have considered the issue of whether apparent bias or conflict of interest on the part of a judge's law clerk could result in an appearance of impropriety which would require reversal of a case.[3] *Compare Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995) (judge did not abuse discretion in refusing to recuse herself on account of her law clerks' professional relationships with two law firms because the relationships were insignificant and did not create an appearance of impropriety); *In re Allied–Signal, Inc.*, 891 F.2d 967 (1st Cir.1989) (judge did not err in refusing to disqualify himself and declare a mistrial based upon his law clerks' family relationships to attorneys representing parties in light of the number of lawyers and parties involved in the complex litigation and the relatively weak and remote nature of the conflict) *with Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir.1988) (judge erred in refusing to disqualify himself based upon his law clerk's close family relationship with a partner in a law firm representing parties in the case and the law clerk's extensive participation in the decision of the case; however, the error was harmless since the decision was a summary judgment motion which the appellate court could review and independently determine); *Hall v. Small Business Administration*, 695 F.2d 175 (5th Cir.1983) (judgment vacated because magistrate erred

in allowing law clerk with a conflict of interest to participate in the case).

These federal cases suggest several conclusions. First, because "judges, not law clerks, make the decisions", *In re Allied–Signal*, 891 F.2d at 971, judges are presumptively capable of taking their law clerks' philosophical or political biases into account during the decision-making process; judges thus remain capable of rendering fair and impartial decisions in spite of their clerks' philosophical or political leanings. At the same time, however, we recognize that law clerks can play a significant role in judicial decision-making:

> Law clerks are not merely the judge's errand runners. They are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decisions. Clerks are privy to the judge's thoughts in a way that neither [the] parties to the law suit nor [the judge's] most intimate family members may be.

*Hall*, 695 F.2d at 179.

Codes of judicial conduct have long recognized the principle that it is not enough for judicial officers to be untainted by bias; judicial officers must, in addition, conduct themselves so as to avoid engendering reasonable suspicions of bias. *See Perotti v. State*, 806 P.2d 325, 327 (Alaska App.1991) (Canon 3C(1) of the Code of Judicial Conduct requires judges to disqualify themselves in "[any] proceeding in which [their] impartiality might reasonably be questioned"). Moreover, the conduct of members of the judge's staff can, in some circumstances, implicate the judge's duty to avoid creating the appearance of bias. Under Alaska Judicial Canon 3B(2), judges must supervise their staff so as to "require [them] ... to observe the standards of fidelity and diligence that apply to [the judge]."

Because of the close working relationship between judges and their law clerks, there

---

thoroughly addressed this issue in supplemental briefing filed June 20, 1996.

**3.** AS 22.20.020, which deals with disqualification of a judicial officer for cause does not directly deal with the possibility that the judge could be disqualified based upon a conflict which arises

from the judge's staff. However Canon 3(B)(2) provides that:

> A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.

comes a point where a law clerk's bias for or against a particular party or attorney, or a law clerk's potential interest in the outcome of particular litigation, rises to an intolerable level—a level where the judicial decisionmaking process comes under reasonable suspicion. As the court stated in *Hamid,* 51 F.3d at 1416, "[e]ven if the judge has no [personal] reason to recuse herself ..., a law clerk's relationships might cause [people to reasonably question] the impartiality of [the] decisions ... in which the [law] clerk participates."

■ If a judge's law clerk is actually biased for or against a party or an attorney, or if the law clerk has a substantial personal interest in the outcome of litigation, then the law clerk should not participate in any facet of the case. *Compare* AS 22.20.020(a)(9), forbidding judges from participating in litigation when they "feel[ ] that, for any reason, a fair and impartial decision cannot be given." *Also compare* Canon 3E(1)(a) of the American Bar Association's Model Code of Judicial Conduct: "A judge shall disqualify himself or herself ... [when] the judge has a personal bias or prejudice concerning a party or a party's lawyer[.]"

More difficult problems are posed by situations short of actual bias or conflict of interest, where a law clerk's actions or a law clerk's relationship to a party or an attorney may give rise to an appearance of partiality. In the worst of such circumstances, disqualifying the law clerk would still be the proper course of action. However, if circumstances gave less cause for alarm, a judge might reasonably decide to reveal the law clerk's potential bias or conflict of interest to the parties and see if they would be willing to waive the problem. *Compare* AS 22.20.020(b) (allowing the parties to waive various grounds of judicial disqualification—but not actual bias); Canon 3F of the American Bar Association's Model Code of Judicial Conduct (again, allowing the parties to waive various grounds of disqualification—but not a judge's "personal bias or prejudice concerning a party").

In the present case, the record raises the possibility that Judge Curda's law clerk, because of her personal relationship with one of the state's attorneys, may have had an actual bias in favor of the attorney who prosecuted Vaska. *Compare* Canon 3E(1)(d)(ii) of the American Bar Association's Model Code of Judicial Conduct (requiring disqualification when "the judge's spouse ... is acting as a lawyer in the proceeding"). Even if this was not so, Rowland's act of revealing a confidential memo to the district attorney might create a reasonable suspicion that she was more than simply philosophically biased in favor of the state—that she was an active partisan who was willing to break the rules to benefit the state.

If reasonable people could conclude that Rowland either was biased or appeared biased, then reasonable people could also question the impartiality of the judicial decisions in which she participated to any significant degree. The record raises the possibility that Rowland participated in the decision of several of the pre-trial motions in Vaska's case.

Our wording in the previous two paragraphs has been tentative because, even now, the pertinent facts are not well developed. Judge Curda refused Vaska's request for an evidentiary hearing, and thus many of the critical facts remain clouded, many of the crucial allegations unresolved. At present, all we can say is that there is reason to suspect that Rowland may have done significant work on Vaska's case, there is reason to suspect that she may have had a personal bias that affected her work in this case, and, even if her work was not affected by any actual bias, there is a significant possibility that her conduct gave rise to a reasonable appearance of bias.

■ We therefore remand Vaska's case to the superior court for an investigation of these issues. From the briefing and the oral argument in this case, it appears that many of the pertinent facts are not in dispute and could be established by stipulation or affidavit. However, because there is a significant possibility that an evidentiary hearing will be required, and because, if a hearing is required, there is a significant possibility that Judge Curda will be a material witness, the

proceedings on remand should be conducted by another judge. *See* AS 22.20.020(a)(3).

■ On remand, it will be Vaska's burden to establish, by a preponderance of the evidence, the factual grounds for distrusting Rowland's participation in the superior court's rulings in Vaska's case. This would apparently involve proof (a) that Rowland was personally biased in favor of the attorney who prosecuted Vaska, or (b) that Rowland engaged in conduct that created a reasonable appearance of strong personal bias in favor of the state—a bias above and beyond philosophical or political bias in favor of the government in criminal cases.

■ If Vaska succeeds in proving either actual bias or a reasonable appearance of bias, this will presumptively invalidate any of the superior court's rulings in which Rowland significantly participated. However, the state should be given the opportunity to prove (again, by a preponderance of evidence) that Rowland did not significantly participate in one or more of those rulings (thus negating the presumption that those rulings are invalid).

After the superior court identifies which (if any) of the prior rulings in this case should be deemed invalid, the final issue will be whether those prior rulings can realistically be reconstructed at this time. With regard to pre-trial rulings involving suppression of evidence, propriety of the indictment, and the like, there is apparently no impediment to having another judge decide these matters *de novo*. However, mid-trial rulings involving the presentation of evidence, the examination of witnesses, and other discretionary matters may present a more difficult problem. The superior court must assess whether it is realistic to have a new judge re-decide these issues or whether it is simply impossible to reconstruct those decisions—in which case Vaska should receive a new trial.

The superior court shall enter findings on these issues and on any others which, during the remand proceedings, appear reasonably necessary to a fair resolution of this case. The court shall transmit its findings to us within 90 days of this order. (If more time is required, either party or the superior court may request an extension.)

REMANDED.