Nathaniel VICKERS, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–9501, A–9502.

Court of Appeals of Alaska.

Jan. 18, 2008.

---

Christi A. Pavia, Pavia Law Office LLC, Anchorage, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Craig J. Tillery, Acting Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Nathaniel Vickers was convicted of violating a condition of his bail release by having contact with his domestic companion, Annette Jamestown.[1] During trial, Vickers ar-

---

1. AS 11.56.757(a).

gued that he was not guilty because he reasonably, though mistakenly, believed his conditions of release allowed him to have contact with Jamestown. The jury rejected that defense and convicted Vickers.

On appeal, Vickers claims the district court impermissibly limited his mistake defense. He also argues that the court violated his due process rights by allowing the State to use evidence of his earlier conviction for violating his conditions of release to show that he was *not* mistaken when he committed the present offense. And he argues that the district court erred by not instructing the jury to consider only written conditions of release and to disregard any evidence of oral no-contact orders. For the reasons discussed below, we conclude that there is no merit to these claims.

Vickers also argues that the district court judge erred by not recusing himself when he realized he had presided over Vickers's first bail hearing and therefore had personal knowledge that Vickers had been ordered to have no contact with Jamestown. But the trial judge did not have personal knowledge of any fact that was disputed in this case, and there was no significant possibility that the judge would be called as a witness. We therefore conclude that the judge did not err by failing to recuse himself sua sponte.

Vickers other claims are waived for inadequate briefing.

*Facts and proceedings*

On July 21, 2004, Vickers was indicted for, among other crimes, assaulting and attempting to murder Annette Jamestown. Vickers was released on bail to a third party custodian on July 19, 2004. One of the conditions of his release prohibited him from any direct or indirect contact with Jamestown.

Less than three months later, on October 9, 2004, Vickers was charged with violating the conditions of his release by having contact with Jamestown. He was convicted of that misdemeanor offense on January 14, 2005. Vickers's sentence in that case included 5 years of probation, and one of the conditions of that probation prohibited him from contact with Jamestown unless James-

town wrote a letter to the district attorney consenting to contact. Jamestown wrote such a letter on March 25, 2005.

When Vickers was released from custody on that conviction he had another bail hearing in his felony case. At that March 2, 2005, hearing, Superior Court Judge Larry D. Card stated that Vickers was to have no contact with Jamestown. Although Judge Card's remarks appear to have been directed, at least in part, to Vickers's third-party custodians, they were made in Vickers's presence:

> There will be no contact between Mr. Vickers and the alleged victim. Do you folks know who she is? All right. There will be no contact.

However, when the court issued its written order and conditions of release, the "no contact" box on the form order was inadvertently left blank. According to testimony in this case, form orders for conditions of release are normally filled out by defense counsel and given to the judge for his or her signature.

Some six weeks later, on April 15, 2005, another bail hearing was held in Vickers's felony case to consider his request to travel to Angoon to attend a memorial service. Judge Card granted that request. At that hearing, the district attorney asked Judge Card to advise Vickers again that he was not to have any contact with Jamestown, because the State was getting reports that Vickers was having contact with her. The judge did not directly respond to that request, although the judge stated, in the context of a discussion about Vickers's ankle monitoring, that "I have a problem with contact with the victim, direct or indirect." But again, the written order and conditions of release left the relevant box unchecked—although the order did state that "all other conditions remain in effect."

On April 23, 2005, Anchorage Detective Steve Lyons, the investigating officer in Vickers's felony case, saw Vickers and Jamestown together, apparently en route to the airport to fly to Angoon. Based on this conduct, Vickers was again charged with violating his conditions of release by having contact with Jamestown.

At trial on that charge, Vickers argued that he reasonably believed, given the absence of check marks in the "no contact" boxes on the March and April orders, that his conditions of release allowed him to have contact with Jamestown. The jury rejected that defense and convicted Vickers. He appeals.

*Discussion*

*The district court did not improperly limit Vickers's mistake defense*

Vickers's primary claim on appeal is that the court improperly limited his argument to the jury that he reasonably, if mistakenly, believed he could have contact with Jamestown.

As noted earlier, at the time of this offense Vickers was on probation for violating the conditions of his release by having contact with Jamestown. One of his probation conditions barred him from contact with Jamestown—unless she wrote a letter to the district attorney permitting such contact, which she did. Vickers argues that the district court should have allowed him to argue to the jury that he reasonably relied on the sentencing order in that prior case, and the letter Jamestown wrote pursuant to that order, to believe he was permitted to have contact with Jamestown. The court disallowed that argument, ruling that it was an impermissible mistake-of-law defense.

In making this ruling, the district court relied on the Alaska Supreme Court's decision in *State v. Strane*.[2] That case involved facts similar to those presented here. Strane was convicted of violating a domestic violence protective order by contacting the woman who had obtained the protective order against him.[3] At trial, Strane sought to defend against that charge by claiming that he honestly, albeit mistakenly, believed the no-contact order did not apply if the woman consented to the contact.[4] The trial court ruled that even if Strane had a good-faith belief that his conduct did not violate the terms of the protective order, that belief did not entitle him to a mistake-of-law defense.[5]

We reversed that decision, ruling that Strane had a right to defend against the charge of violating a domestic violence protective order by showing that he had an honest but mistaken belief that his conduct did not violate the order.[6] But the supreme court disagreed with our analysis. The court held that Strane's subjective understanding of the effect or scope of the no-contact order was irrelevant. As the supreme court explained: "It does not matter whether Strane mistakenly concluded—for whatever reason—that the no-contact order was inapplicable to his conduct; what matters ... is Strane's admitted awareness of the restraining order's existence and contents."[7] The court concluded that Strane's admitted awareness of the protective order's existence and contents—which included the order's "facially clear and unqualified no-contact provisions"—sufficed to establish the circumstances element of his offense: that he recklessly disregarded a substantial and unjustifiable risk that his conduct was prohibited by the order.[8]

Vickers argues that *Strane* is not controlling in his case. He notes that Strane was convicted of violating a protective order, not of violating conditions of release, and that different statutory schemes govern those crimes. He also notes that the order at issue in *Strane* clearly prohibited contact, while the bail orders in his case were ambiguous. But these distinctions have no bearing on the pertinent holding in *Strane* that a defendant cannot ask a jury to acquit him based on his honest subjective belief as to the meaning of a judicial order. The applicable culpable mental state is "recklessly." Thus, an honest belief is not sufficient to exculpate the defen-

---

2. *State v. Strane (Strane II),* 61 P.3d 1284 (Alaska 2003).

3. *Id.* at 1285.

4. *Id.*

5. *Id.*

6. *Strane v. State (Strane I),* 16 P.3d 745, 748–49 (Alaska App.2001).

7. *Strane II,* 61 P.3d at 1290.

8. *Id.* at 1292.

dant if the defendant understood that there was a substantial and unjustifiable possibility that his conduct would violate the order—that is, if the defendant's decision to run this risk was a gross deviation from what a reasonable person would do under the circumstances.[9]

■ Applying that rule here, Vickers's subjective understanding of the legal effect or scope of the conditions of his release was not particularly relevant. But Vickers *was* entitled to challenge the State's proof that he was reckless, either by showing that he was unaware of the risk that his conduct would violate the order, or by showing that his decision to run that risk was not a gross deviation from what a reasonable person would do in the situation. And Judge Lohff allowed Vickers to do this.

The judge admitted all of the evidence on this point that Vickers offered. Furthermore, the judge allowed Vickers to argue that he reasonably believed the March 2 and April 15 orders allowed him to contact Jamestown. Vickers was also allowed to argue that the sentencing order and letter in his prior case gave him reason to look carefully at the bail orders in this case and to conclude that they did not prohibit contact with Jamestown.

The only restriction the court placed on Vickers's litigation of this point was to bar Vickers from arguing that he was entitled to an acquittal based on his subjective mistaken belief that the sentencing order issued in his earlier misdemeanor case (and the letter that Jamestown wrote pursuant to that order consenting to contact) waived or superseded the no-contact provision of release in his felony case.

Judge Lohff was not mistaken in limiting Vickers's defense in this manner. In *Busby v. State*,[10] we upheld a similar restriction on the presentation of a defense case. The issue in *Busby* was whether the defendant could defend against a charge of driving with a revoked license by claiming that he mistakenly believed, based on his own research, that his international driving permit gave him the right to drive in Alaska even though his Alaska driver's license was revoked. We held that this argument constituted an impermissible mistake-of-law defense.[11] Likewise, in *Clark v. State*,[12] we ruled that the defendant could not defend against a charge of felon in possession of a concealable firearm by relying on his erroneous belief that the probation condition barring him from possessing firearms was suspended while his conviction was on appeal.[13] We observed that Clark's mistake-of-law claim "amount[ed] only to his personal belief that he was not convicted for purposes of the felon in possession statute while his case was on appeal. This is far from the type of claim where a reasonable mistake of law constitutes a defense."[14]

Vickers's case is governed by this same rule. Vickers was not entitled to argue to the jury that he should be acquitted based on a mistaken personal belief that the letter Jamestown wrote (the letter consenting to contact with Vickers) superseded the no-contact provision of the conditions of release in his felony case. We therefore conclude that Judge Lohff did not err in limiting Vickers's defense in this manner.

*There is no merit to Vickers's claim that the court should have instructed the jury that only written conditions of release were relevant*

■ In this case, Judge Lohff instructed the jury that oral and written conditions of bail carry equal weight. Vickers argues that the district court should have instructed the jury that the written orders and conditions of release were the only relevant orders in his case. In support of this claim, he points to AS 12.30.027(c), the statute that requires courts imposing release conditions in cases involving domestic violence to issue a written

---

**9.** *Id.* at 1290. *See* AS 11.81.900(a)(3) (the definition of "recklessly").

**10.** 40 P.3d 807 (Alaska App.2002).

**11.** *Id.* at 816–17.

**12.** 739 P.2d 777 (Alaska App.1987).

**13.** *Id.* at 779.

**14.** *Id.*

order specifying a defendant's conditions of release and to provide a copy of the order to the defendant.[15] This provision is similar to AS 12.30.020(d), which requires in any criminal case that the court "issue an order containing a statement of the conditions imposed." Both of these provisions promote notice of the conditions imposed.

To prove that Vickers violated a condition of his release, AS 11.56.757 requires the State to prove that Vickers violated a condition of release imposed by a judicial officer under AS 12.30. The statute does not exclude a condition of release imposed orally by a judicial officer but, through oversight or error, not included in a written order.

*The court did not violate Vickers's due process rights by allowing the State to rely on his prior conviction to show absence of mistake*

■ Vickers argues that the court violated his due process rights by allowing the State to use the evidence of his prior conviction for violating his conditions of release to show that he was *not* mistaken when he committed this offense—while preventing him from using the same evidence to show he *was* mistaken.

Vickers raised this same argument at trial. In response, Judge Lohff outlined the permissible arguments the parties could make based on this evidence: He ruled that Vickers could argue that the earlier conviction put him on notice that bail conditions are important, and led him to look carefully at the conditions in this case and to infer that they did not bar contact with Jamestown. Conversely, Judge Lohff ruled that the State could rely on the prior conviction to show that Vickers was aware of his bail conditions. Vickers did not object to this resolution.

Based on the court's ruling, the prosecutor argued as follows:

I told you that you cannot use this prior [violating conditions of release] conviction for the proposition that he—that Annette [Jamestown] can consent to contact. You can't do that, it's improper use, a mistake of law defense. What you can use it for is

to show that the defendant has been previously convicted of [violating conditions of release], which means that he knows that violating his bail conditions leads to criminal liability. He knows that if he doesn't follow his bail conditions he may end up being charged and ultimately convicted. That's what you can use this prior [conviction for violating conditions of release] for. You can use it to show that he had the knowledge, he knew that he had bail conditions. He knew that if he had any question of what his bail conditions were a reasonable person would have asked and would have sought clarification from the judge.

Thus, the State did not argue, as Vickers asserts, that Vickers "could not have been mistaken about his ability to have contact with Ms. Jamestown because he'd already gotten in trouble for that before." Rather, the State relied on the evidence of Vickers's prior conviction simply to show that Vickers "knew that he had bail conditions."

Vickers's attorney argued in turn:

[Vickers] chose to ... tell you about the fact that he had been convicted in January, why he was convicted, and it made an impact on his life and he wasn't going to make that mistake again, so he wanted to be very careful about his contact. He believed fully in his mind that he could have contact with ... Annette, and the reason he did was because of the documents in his possession. He had the March 2nd and the April 15th court orders that were very clear.

This is exactly the argument that Vickers claims in his brief on appeal that he was prohibited from making at trial. Vickers is thus wrong when he asserts that the court prevented him from rebutting the State's argument about the relevance of his prior conviction to his mental state. The court allowed both parties to argue this issue, within the constraints of the court's ruling disallowing a mistake-of-law defense. Furthermore, Vickers waived any claim of error because he did not object to the court's resolution of this issue at trial, and because he

**15.** AS 12.30.027(c)(1), (2).

did not cite or discuss the court's ruling on this issue in his brief on appeal.[16]

*Did Judge Lohff err in failing to recuse himself?*

■ During sentencing, Judge Lohff remarked that he had presided over Vickers's first bail hearing and that he had clearly ordered Vickers, as a condition of his release, to have no contact with Jamestown. Based on this statement, Vickers argues that Judge Lohff should have sua sponte recused himself because he had personal knowledge of a disputed evidentiary fact in this case—whether Vickers knew he could have contact with Jamestown—and was therefore a material witness. He claims Judge Lohff's failure to recuse himself "tainted the entire proceedings and quite clearly the sentencing, when Judge Lohff specifically relied on his prior knowledge."

■ A judge is not required to recuse himself simply because he previously presided over a case involving the party seeking recusal.[17] As the supreme court has explained, "every judge, when he hears a case or writes an opinion must form an opinion on the merits and ... [often] an opinion relative to the parties involved. But this does not mean that the judge has a 'personal bias or prejudice.' "[18] Furthermore, a party seeking to disqualify a judge for bias must show that the judge's actions "were the result of personal bias developed from a nonjudicial source."[19] Thus, to the extent that Vickers is arguing that Judge Lohff had a duty of disclosure or recusal based solely on the fact that he presided over Vickers's first bail hearing, there is no merit to his claim. Vickers was present at that bail hearing, and if he did not remember who the judge was, he could easily have obtained that information. Moreover, Vickers has offered no persuasive argument that he was prejudiced by Judge Lohff's personal knowledge of his case.

Vickers next argues that Judge Lohff had a duty to disqualify himself because he had "personal knowledge of disputed evidentiary facts concerning the proceeding."[20] This claim also fails. The parties actively disputed whether it was reasonable for Vickers to believe he could have contact with Jamestown, given the March 2 and April 15 bail orders (which did not expressly bar contact) and the January 2005 sentencing order and letter in his prior misdemeanor case (which permitted contact if Jamestown wrote a letter consenting to contact). But Vickers never argued that the order issued by Judge Lohff in July 2004 allowed contact with Jamestown (clearly, on its face, it did not). Rather, he argued that the order had no relevance to this case.

Vickers also argues that Judge Lohff was a material witness, and that he was therefore obliged to disqualify himself under AS 22.20.020(a)(3). This claim fails for the same reason. There was no significant possibility that Judge Lohff would be called as a witness.[21] Vickers's position at trial was that the March 2 and April 15 orders and conditions of release were the only relevant orders in this case. He therefore had no reason to call Judge Lohff to testify about an order the judge issued some eight months earlier—especially an order that stated on its face that Vickers was to have no contact with Jamestown. The only additional evidence Judge Lohff could have offered was his recollection, if any, that he verbally told Vickers to have no contact with Jamestown. Given these circumstances, Judge Lohff had no

**16.** *Tenala, Ltd. v. Fowler,* 921 P.2d 1114, 1121 n. 10 (Alaska 1996); *McCormick v. Anchorage,* 999 P.2d 155, 166 (Alaska App.2000).

**17.** *Pride v. Harris,* 882 P.2d 381, 385 (Alaska 1994); *see Hanson v. Hanson,* 36 P.3d 1181, 1184 (Alaska 2001).

**18.** *Pride,* 882 P.2d at 385 (quoting *State v. Anchorage,* 513 P.2d 1104, 1113 (Alaska 1973), *disavowed on other grounds in State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982) (quoting *Tucker v. Kerner,* 186 F.2d 79, 84 (7th Cir.1950))).

**19.** *Hanson,* 36 P.3d at 1184.

**20.** Alaska Code of Judicial Conduct, Canon 3 E(1)(A).

**21.** *See Vaska v. State,* 955 P.2d 943, 946–47 (Alaska App.1998) (disqualifying judge under AS 22.20.020(a)(3) because there was a significant possibility that he would be called as a material witness on remand).

duty to disqualify himself as a material witness under AS 22.20.020(a)(3). Nor was Judge Lohff obliged to disclose his involvement because AS 22.20.020 imposes a duty of disclosure only if the judge has some basis to disqualify himself under the statute.[22]

*Vickers's other claims are inadequately briefed*

■ Vickers argues that the court improperly limited his cross-examination of Detective Lyons about Jamestown's letter giving him permission to contact her. But the State objected to admission of that letter on the grounds that it had not been authenticated and its relevance had not been shown. The court ruled that Vickers could not question Detective Lyons about the letter until it was authenticated and until he had offered evidence to show that it was the letter Vickers referred to when he told Detective Lyons he had permission to contact Jamestown.

Vickers later called Jamestown to testify that she wrote the letter, and the letter was admitted into evidence. Vickers testified that his son gave him a copy of the letter. But Vickers never recalled Detective Lyons as a witness.

Vickers has not discussed the court's ruling on this issue or shown how it was wrong. Nor has he explained why he did not recall Detective Lyons, or how he was prejudiced by the limitations the court placed on the order of proof. For these reasons, Vickers's claim is waived for inadequate briefing.[23]

Vickers also claims that the court erroneously excluded a "temporary order note" that failed to contain a no-contact provision. He cites to the page of the transcript at which the court excluded Vickers's March 2, 2005, Instructions to Jail. But Vickers gives no insight into why he believes this evidence was wrongly excluded. His claim is therefore waived for inadequate briefing.[24]

■ Vickers argues that the court abused its discretion by allowing evidence of his prior conviction to come in by way of his recorded statement to Detective Lyons that he had "paperwork from two courts." He also argues that the court erred by not granting a mistrial on this basis.

During trial the State played an audio tape of Detective Lyons's interview with Vickers in which Vickers asserted that he had "paperwork from two courts" permitting him to have contact with Jamestown. Vickers moved for a mistrial after this statement was admitted, arguing that it violated the court's protective order. The court denied the mistrial motion. Later, the evidence of Vickers's prior conviction was admitted at Vickers's request.

Judge Lohff made no ruling admitting this evidence. Rather, the State failed to redact it from the audio tape. Judge Lohff concluded that the admission of Vickers's reference to "paperwork from two courts" did not violate the protective order because it was difficult to hear and did not necessarily support an inference that Vickers had a prior conviction. Judge Lohff also offered to give a curative instruction, which Vickers declined. Vickers does not discuss the court's findings, point out why he thinks they were wrong, or cite any authority to support his claims. His claims are therefore waived for inadequate briefing.[25]

Vickers argues that the court, the State, and the State's witnesses, wrongly instructed the jury that it was "unheard of" to allow contact between a defendant and an alleged victim of domestic violence. But in support of this claim, Vickers—with one exception—cites to discussions that took place outside the presence of the jury. The exception involved a witness who testified that during the eight and a half years she had worked with Judge Card, she could not remember him ever allowing a defendant to contact a

**22.** AS 22.20.020(b).

**23.** *Petersen v. Mutual Life Ins. Co. of N.Y.*, 803 P.2d 406, 410 (Alaska 1990) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

**24.** *Id.*

**25.** *Id.*

victim in a case with allegations similar to those in Vickers's case. But Vickers did not object to this testimony, nor does he explain on appeal how this testimony equates to an improper jury instruction. His claim is therefore waived for inadequate briefing.[26]

Vickers also appears to argue that the court usurped the jury's role in judging Vickers's credibility by stating that it would be "disingenuous" of Vickers to assert that he was unaware of a condition of release he had previously been convicted of violating. Vickers takes this statement out of context. Judge Lohff made this statement outside the presence of the jury when he initially ruled that the State could not offer evidence of Vickers's prior conviction. The court warned Vickers that it might reconsider its ruling if Vickers made the "disingenuous" argument that he was unaware of the condition of release. After the evidence of Vickers's prior conviction was admitted at Vickers's request, the court heard additional argument and made more precise rulings on how evidence of the prior conviction could be used. Viewing Judge Lohff's remark in the proper context, there is no merit to Vickers's claim that he usurped the jury's role in judging credibility.

Lastly, Vickers argues that his sentence of 150 days to serve is excessive because Judge Lohff should have recused himself and because Judge Lohff erroneously limited his mistake defense. Vickers is apparently arguing that even if we fail to find reversible error on these grounds, we should reduce his sentence to 120 days. But Vickers does not explain his rationale or cite any authority to support his claim. Moreover, as discussed above, Judge Lohff did not err in limiting Vickers's mistake defense or in failing to recuse himself sua sponte. Vickers has therefore given us no reason to conclude that Judge Lohff's sentence was clearly mistaken.[27]

26. *Id.*

27. *See* AS 11.56.757(b)(1) (providing that a violation of conditions of release is a class A misdemeanor if the person is released from a felony charge); AS 12.55.135(a) (authorizing a term of

*Conclusion*

Vickers's conviction and sentence are AFFIRMED.

imprisonment of up to 1 year for a class A misdemeanor). *See also McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (holding that an appellate court is to uphold a sentencing decision unless the sentence is clearly mistaken).