Stanley VASKA, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–11171.

Supreme Court of Alaska.

May 15, 2006.

---

7. *Id.* at 643–45.

Margi Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Respondent.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

A jury found Stanley Vaska guilty of sexually abusing T.E., a minor. The evidence identifying Vaska as the young child's abuser included testimony of T.E.'s mother describing statements T.E. had made after the alleged abuse. Because T.E. said at trial that she had no memory of the period in her childhood when the abuse occurred, the trial court admitted her mother's testimony under

the "catchall" exception to Alaska's hearsay rule. On appeal, Vaska argued that the trial court erred in applying the catchall exception. In response, the state urged the court of appeals to affirm on the alternative ground that T.E.'s statements were admissible as prior inconsistent statements. The court of appeals accepted this argument and affirmed Vaska's conviction, ruling that T.E.'s statements were admissible under this new theory.[1] We granted Vaska's petition for hearing and now reverse. Because Vaska's decision not to cross-examine T.E. at trial may have been influenced by the state's exclusive reliance on the catchall exception and by its failure to lay any foundation to admit T.E.'s statements as prior inconsistent statements, we hold that it was error to apply the prior-inconsistent-statement provision for the first time on appeal, and we remand to allow the court of appeals to consider other potential grounds for affirming.

## II. FACTS AND PROCEEDINGS

Three-year-old T.E. began having mood swings in the spring of 1994. She eventually disclosed to her mother, Olga E., that "her girl" (T.E.'s term for her genital area) hurt. T.E. later told her mother that a "ga-ga" (the family term for "monster") had hurt her. Olga reported the abuse and took T.E. to a hospital in Bethel for examination by Dr. Donald Burgess. Dr. Burgess asked T.E. to show the area of her pain on an anatomically correct doll, and T.E. responded by pointing to the doll's genital area and to its mouth. Dr. Burgess asked T.E. who had hurt her, and T.E. answered, "Ga-ga." T.E. then referred to M.V.'s "daddy's ga-ga."[2] She placed her finger in the doll's vagina when asked how the "ga-ga" hurt her. Dr. Burgess conducted a pelvic examination and found an opening in T.E.'s hymen that was larger than any he previously observed in a

girl her age. The doctor concluded that T.E. had been penetrated by a large object. Sometime after this examination, Olga and T.E. were walking in their home community of Russian Mission and encountered Vaska. According to Olga, T.E. said, " 'There's the ga-ga—he's the ga-ga' and then she pointed at Stan [Vaska]."

Vaska was later indicted and convicted on one count of first-degree sexual abuse of a minor, T.E., and one count of second-degree sexual abuse of another minor, M.V.[3] Vaska appealed the convictions to the court of appeals, which reversed and ordered new trials.[4]

At Vaska's retrial on the count relating to T.E., the state called T.E. as a witness and questioned her briefly, but ended its examination after T.E. said that she could not remember anything before the third grade. T.E.'s complete testimony was as follows:

Q: . . . . How old are you [T.E.]?

A: Ten.

Q: And do you know what your birthday is?

A: March 5.

Q: Do you know what year you were born in?

A: 1991.

Q: And you're going to school now?

A: Uh-huh (affirmative).

Q: What grade? What grade did you just finish?

A: Fourth.

Q: Did you like school?

A: Uh-huh (affirmative).

Q: What was your teacher's name?

A: Theresa Vaska.

Q: Now, do you know what it means to tell the truth?

A: (Inaudible reply).

1. *Vaska v. State*, 74 P.3d 225, 228–30 (Alaska App.2003).

2. M.V. is Vaska's daughter and T.E.'s cousin.

3. *Vaska v. State*, 955 P.2d 943, 944 (Alaska App. 1998).

4. *Vaska v. State*, Mem. Op. & J. No. 4326 (Alaska App., January 10, 2001), 2001 WL 21196, at *3–4. The court of appeals remanded for determi-

nation whether the superior court's law clerk was biased against Vaska. *Vaska*, 955 P.2d at 947. On remand, the superior court decided to sever the two counts. *Vaska v. State*, 2001 WL 21196, at *1. The petition now before us concerns only Vaska's conviction on the count charging him with abusing T.E.

Q: You don't know what it means to tell the truth? Do you know the differ—well, what if I told you it's snowing in the room her [sic] today? What am I doing?

A: Lying.

Q: Is that good?

A: Unh-unh (negative).

. . . .

Q: Now, [T.E.], do you remember back to when you were a little tiny girl?

A: Unh-unh (negative).

Q: What's the—what—think—what I'd like you to do is think back in your mind and what's the first thing you can think of as a little girl?

(Pause)

Q: Do you remember being in kindergarten?

A: (Inaudible reply).

Q: No? Do you remember being in first grade?

A: (Inaudible reply).

. . . .

A: No.

Q: What grade do you remember?

A: Third.

Q: Third grade? Okay. Do you—what's your mom's name?

A: Olga [E.].

Q: What's your daddy's name?

A: Larry [E.].

Q: So do you remember anything before the third grade?

A: No.

Q: Okay.

[Prosecutor]: I don't have any other questions, Your Honor.

Defense counsel did not cross-examine T.E. The court then told T.E., "You can leave now, that's the end of your testimony ma'am." The trial transcript states: "(Witness excused)."

After T.E. left the stand, the prosecutor asked the superior court to find, under Alaska Rule of Evidence 804(a)(3), that T.E. was unavailable as a witness because she lacked all memory of her out-of-court statements.[5] The prosecutor then moved to have T.E.'s statements to her mother admitted under Evidence Rule 804(b)(5), the catchall exception to the hearsay rule.[6]

The superior court stated that it "would allow the mother to testify as to the statements [T.E.] made concerning identification of the defendant. . . ." The court also stated that "there's no reason to believe . . . that these statements are so unreliable as to be inadmissible." The court concluded that, given the "broad general exceptions under 804(b)(5), . . . given the evidence presented to date and the review of the court file . . . the court believes that testimony by the mother of statements made . . . by her daughter, concerning this incident will be admissible."

The prosecutor then called T.E.'s mother to the witness stand. She described the statements T.E. made to her about "her girl" hurting and the "ga-ga"; she also testified that on one occasion, when she and T.E. encountered Vaska while walking together in Russian Mission, T.E. said, "There's the ga-ga—he's the ga-ga" and "then she pointed at Stan [Vaska]." The state never sought to

---

5. Alaska Evidence Rule 804(a)(3) defines unavailability to include "situations in which the declarant . . . establishes a lack of memory of the subject matter of the declarant's statement."

6. Under Alaska Evidence Rule 804(b)(5), if a declarant is unavailable as a witness, the hearsay rule does not exclude:

> [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Alaska appellate decisions have variously referred to this provision as the "residual exception" and "catch-all exception" to the hearsay rule. *See, e.g., In re T.P.,* 838 P.2d 1236, 1239 (Alaska 1992); *In re A.S.W.,* 834 P.2d 801, 802, 804 (Alaska 1992); *Cleveland v. State,* 91 P.3d 965, 971 (Alaska App.2004); *Hughes v. State,* 56 P.3d 1088, 1091 (Alaska App.2002). We refer to it here as the catchall exception.

recall T.E. to the witness stand after she was excused. Nor did it ever ask the trial court to admit T.E.'s prior statements as prior inconsistent statements under Alaska Evidence Rule 801(d)(1)(A).

■ The jury found Vaska guilty of sexual abuse of T.E. in the first degree. Vaska appealed, arguing that the admission of T.E.'s hearsay statements to her mother under Evidence Rule 804(b)(5)'s catchall exception violated the confrontation clauses of the state and federal constitutions.[7] In response, the state urged the court of appeals to hold, as an alternative ground for affirming,[8] that the statements were admissible as prior inconsistent statements under Alaska Evidence Rule 801(d)(1)(A)[9]—a theory that the state had never previously asserted. The court of appeals adopted this new theory and affirmed Vaska's conviction without deciding whether T.E.'s statements were admissible under the catchall exception.[10]

Vaska petitioned for hearing to this court, challenging the court of appeals's ruling that T.E.'s statements were admissible as prior inconsistent statements. We granted the petition to consider that issue.

## III. DISCUSSION

### A. Standard of Review

■ We apply de novo review in determining whether an intermediate appellate court has erroneously applied new legal grounds to affirm a trial court's ruling.[11]

### B. The State Failed To Establish a Foundation for Admitting T.E.'s Prior Statements Under Evidence Rule 801(d)(1)(A).

Vaska challenges the court of appeals's ruling that T.E.'s prior statements implicating Vaska were properly admitted as prior inconsistent statements. The superior court did not rely on this theory; instead, it ruled the statements admissible under Alaska's catchall exception, Alaska Rule of Evidence 804(b)(5).[12] Not until Vaska appealed did the state first argue that the statements were admissible as prior inconsistent statements.[13] The court of appeals accepted the state's argument and admitted the disputed evidence on this new theory. Vaska argues that the court of appeals erred in so ruling.

Alaska Rule of Evidence 801(d)(1) allows prior statements of a witness to be admitted if:

The declarant testifies at the trial or hearing and the statement is (A) inconsistent with the declarant's testimony. Unless the interests of justice otherwise require, the prior statement shall be excluded unless (i) the witness was so examined while testifying as to give the witness an opportunity to explain or to deny the statement or (ii) the witness has not been excused from giving further testimony in the action.

■ The party offering a statement under this rule must satisfy two foundational conditions.[14] First, the offering party must show that the prior statement is indeed inconsistent with the declarant's testimony. "Inconsistency" does not necessarily require textual conflict; other circumstances, including lack of memory at trial, may suffice.[15]

---

7. *Vaska*, 74 P.3d at 226.

8. An appellate court can affirm a correct ruling of law by a trial court, regardless of the grounds relied upon by the trial court, "if there exist independent grounds which, as a matter of law, support the trial court's conclusion." *McGee v. State*, 614 P.2d 800, 805–06 n. 10 (Alaska 1980).

9. *Vaska*, 74 P.3d at 227.

10. *See generally Vaska*, 74 P.3d 225.

11. *McGee*, 614 P.2d at 805–06 n. 10; *Stordahl v. Gov't Employees Ins. Co.*, 564 P.2d 63, 67 n. 16 (Alaska 1977).

12. *Vaska*, 74 P.3d at 227.

13. *Id.* The state's brief in the court of appeals candidly stated that "neither the state nor the trial court relied on [Rule 801(d)(1)(A)] as a basis for admitting T.E.'s out-of-court statement...."

14. *Cf. Dobos v. Ingersoll*, 9 P.3d 1020, 1024 (Alaska 2000) (stating that, for admission of hearsay statement under Evidence Rule 803(1), "[t]he burden is on the proponent of the evidence to establish the foundational facts necessary for the hearsay exception").

15. "[I]nconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." *United States v. Dennis*, 625 F.2d 782, 795 (8th Cir.1980) (interpreting Fed.R.Evid.

Because the question whether a declarant's alleged lack of memory establishes inconsistency often becomes a disputed issue,[16] a claim of inconsistency based on faulty memory normally must be raised by the offering party at the trial court level. The trial court is best situated to resolve testimonial disputes of this kind, and raising the issue in the trial court ensures that the party against whom the prior statement is offered will have ample notice that inconsistency has been asserted and a fair opportunity to contest this foundational point.

■ The second foundational condition for admitting a prior inconsistent statement requires that the witness who made the prior statement be given an opportunity to explain or deny it. Under Evidence Rule 801(d)(1)(A)(i), the offering party usually must meet this requirement by ensuring that the witness is "so examined while testifying as to give the witness an opportunity to explain or deny the statement." Alternatively, Evidence Rule 801(d)(1)(A)(ii) sometimes allows trial courts to admit a prior inconsistent statement before the declarant can explain or deny it—but only if "the witness has not been excused from giving further testimony in the action."[17] As the commentary to Rule 801(d)(1)(A) makes clear, however, this option applies only in exceptional situations: "Except in special cases, counsel should lay the foundation for an inconsistent statement while the witness who made the statement is testifying...."[18]

■ Ordinarily, then, Rule 801(d)(1)(A) contemplates that both of the foundational conditions it describes should be met before the prior statement is admitted, and while the declaring witness is still on the stand. And at a minimum, the rule directs that the full foundation must be laid before the declarant has been excused from testifying.[19] The text of Evidence Rule 801(d)(1)(A)(i) makes these expectations clear by requiring that the declarant be "so examined while testifying as to give the witness an opportunity to explain or to deny the statement."[20] It follows that when the state fails to make a prima facie showing of compliance with the rule's foundational conditions, the defendant has no duty to cross-examine the declarant in order to negate the existence of a proper foundation. Indeed, to shift the foundational burden in this way would leave a defendant like Vaska with an untenable choice: "[F]orcing a defendant to call a child complainant to testify in order to cross-examine that individual ... unfairly requires a defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case."[21]

■ Although we have long recognized that the foundational conditions for admitting a prior inconsistent statement "should not be

---

801(d)(1)(A)) (citing *United States v. Rogers*, 549 F.2d 490, 495–96 (8th Cir.1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977)); *see also Richards v. State*, 616 P.2d 870, 871 (Alaska 1980) ("When [the declarant] testified at trial that he had forgotten much of what he had seen that night, the tape was admissible as a prior inconsistent statement.").

16. *See, e.g., Wassilie v. State*, 57 P.3d 719, 722 (Alaska App.2002) (affirming admission under Evidence Rule 801(d)(1)(A) where elderly witness could not recall at trial statements he made to police investigating assault); *Brandon v. State*, 839 P.2d 400, 411–12 (Alaska App.1992) (upholding admission where witness had no memory at trial of prior statements); *Van Hatten v. State*, 666 P.2d 1047, 1049–51 (Alaska App.1983) (holding feigned memory loss inconsistent with prior statement).

17. A.R.E. 801(d)(1)(A)(ii).

18. Commentary, A.R.E. 801(d)(1)(A). The commentary for Rule 801(d)(1)(A) refers to the foundation requirement for Alaska Evidence Rule 613, which "generally requires asking the testifying witness to identify the statement after being reminded of its substance and to whom it was made, and either to admit having made the statement and explain the circumstances, or to deny it." Commentary, A.R.E. 613(b). Rule 613(b) addresses use of prior inconsistent statements to impeach the declarant.

19. *Id.*

20. If admission is sought under the alternative provided in Evidence Rule 801(d)(1)(A)(ii), the declarant cannot have been excused as a witness; this implies that inconsistency must be demonstrated while there is still an opportunity for the declarant to testify.

21. *Lowery v. Collins*, 996 F.2d 770, 771 (5th Cir.1993).

mechanically applied in every instance,"[22] our adherence to this principle assumes a corresponding showing of circumstances establishing good cause to relax the rule's clear commands; we have never suggested that the principle of flexibility should routinely excuse offering parties from complying with Rule 801(d)(1)(A)'s foundational prerequisites. As already indicated, the commentary to the rule precludes such an interpretation by emphasizing that the rule's foundational conditions should be enforced "except in special cases."[23] This emphasis on the need for compliance as a general rule is justified because the foundational conditions serve the vital purpose of protecting the rights to effective confrontation and cross-examination.[24] They do this by sparing the party against whom a prior inconsistent statement is offered from the unfair burden of having to *directly* examine a witness about a prior statement that has not yet been shown to be admissible under Rule 801, while at the same time preserving that party's right to fully cross-examine the declarant about the statement if it passes muster and is properly admitted.

Moreover, when Rule 801(d)(1)(A) is invoked for the first time on appeal, as the state invoked it here, the need to enforce its foundational conditions takes on added importance because those conditions serve the additional purpose of protecting the accused from being unfairly surprised by the rule's late invocation. In this procedural setting, because compliance with the rule's foundational conditions would provide actual notice at trial that the statement in question met

the prerequisites for admission under Rule 801(d)(1)(A), the existence of a proper foundation would at a minimum ensure that the accused received fair and timely warning that the rule might be invoked.

With these considerations in mind, we turn to the facts of this case. Here, the trial court excused T.E. and declared her unavailable as a witness immediately after the prosecution's preliminary questioning caused her to claim that she could not recall anything that had happened to her before she entered third grade. Because the state did not offer to admit T.E.'s statements as prior inconsistent statements during the trial, the adequacy of the state's foundation for admission under this theory necessarily depends on whether the state's brief examination of T.E. established inconsistency between her trial testimony and her prior statements and resulted in her being "so examined" as to give her "an opportunity to explain or deny the [prior inconsistent] statement[s]."[25] T.E.'s abbreviated testimony failed to satisfy, or even address, either foundational condition for admission under Rule 801(d)(1)(A). The court of appeals nevertheless excused these foundational flaws, primarily relying on two previous cases in which it had considered foundational challenges to prior inconsistent statements: *Bodine v. State*[26] and *Wassilie v. State*.[27]

In *Bodine*, a child declarant made statements to social workers and the police, alleging fellatio with her father.[28] At trial, she repeatedly denied that her father had ever put anything in her mouth and also denied

**22.** *McMaster v. State,* 512 P.2d 879, 882 (Alaska 1973).

**23.** Commentary, A.R.E. 801(d)(1)(A).

**24.** *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

**25.** A.R.E. 801(d)(1)(A)(i). Although Rule 801(d)(1)(A)(ii) provides an alternative route for admission in exceptional cases when an "opportunity" to deny or explain can be established because a declarant "has not been excused from giving further testimony in the action," this provision has no conceivable application here. As already mentioned, T.E. was excused and declared unavailable immediately after the state's

preliminary questioning concluded. Even assuming that both parties might have remained free to recall her for purposes of laying the required foundation during the remainder of the trial, neither party had occasion to do so, because the State failed to invoke the prior inconsistent statement rule until the trial was over and Vaska filed his appeal. By then, of course, no possibility of recalling T.E. existed.

**26.** *Bodine v. State,* 737 P.2d 1072 (Alaska App. 1987).

**27.** *Wassilie v. State,* 57 P.3d 719 (Alaska App. 2002).

**28.** *Bodine,* 737 P.2d at 1073.

ever telling anybody that he had done so.[29] The trial court admitted into evidence her statements to the social workers and police. The prosecutor had not specifically asked the witness questions about when she made the prior statements, to whom they were made, or their exact contents, but when Bodine appealed, the court of appeals held that for purposes of Rule 801(d)(1)(A), the prosecutor's questions sufficiently alluded to the subject matter of the child's statements to the social worker and the police.[30] The court of appeals concluded that, given the child's age and the subject matter of the interrogation, the superior court did not abuse its discretion in admitting the statements.[31]

The court reached a similar conclusion in *Wassilie v. State.* There, an elderly witness at trial could not remember a statement he had made to police after he and his wife were assaulted. The prosecutor did not directly confront the witness with his prior statement or ask him to explain or deny it, but did ask him whether he recalled talking to the police or the police coming to his home.[32] Even though he could not recall any details, the witness was able to testify that his wife had in fact been injured.[33] Analogizing the witness's limited ability to testify to that of a child, the court of appeals recognized that foundational requirements "should not be mechanically applied in every instance" and concluded that the trial court had not abused its discretion in admitting the prior statement despite the minimal foundation presented.[34]

Here, unlike *Bodine* and *Wassilie,* where the prosecutors conducted at least a minimal inquiry into the prior statements, none of the questions the state posed to T.E. remotely touched upon or even suggested the subject matter of her prior statements. The state's brief examination of T.E. consisted entirely of preliminary, background questions covering topics such as what it means to tell the

truth, how far back in elementary school T.E.'s memory extended, and the names of her parents. None of these questions gave T.E. an opportunity to explain or deny any prior statements T.E. made to her mother regarding sexual abuse by Vaska. The prosecutor failed to ask about the subject matter of T.E.'s prior statements; he likewise failed to ask about the surrounding circumstances in which T.E. made those statements. Nor did the state otherwise attempt to test T.E.'s lack of memory; it simply accepted at face value her general assertion that she remembered nothing that happened before she entered third grade.

In short, the state abandoned its examination of T.E., asked for her to be declared unavailable, and allowed her to be excused without complying with either foundational prerequisite for admitting prior inconsistent statements-indeed, without eliciting any germane testimony whatsoever. To be sure, as we noted above, a declarant need not directly deny or contradict a prior statement to establish inconsistency. But in our view the duty to establish inconsistency under Rule 801(d)(1)(A) requires something more concrete and specific than an unexplained statement asserting a general memory loss of everything before third grade. By the same token, while it seems safe to assume that the state's duty to give T.E. a chance to explain or deny her prior statements might be minimal under the circumstances presented here, the state offers no persuasive justification for ignoring this condition completely. The state's near-total failure to lay a foundation provides a strong factual ground distinguishing this case from *Bodine* and *Wassilie.*

The dissent tries to dismiss Rule 801(d)(1)(A)'s opportunity-to-explain requirement as merely a dispensable frill.[35] Citing *McMaster v. State,*[36] it suggests that this requirement is "distinctly optional where

---

**29.** *Id.* at 1074.

**30.** *Id.*

**31.** *Id.*

**32.** *Wassilie,* 57 P.3d at 721.

**33.** *Id.* at 720.

**34.** *Id.* at 721–22 (quoting *McMaster,* 512 P.2d at 882).

**35.** Dissent at 1030–31.

**36.** 512 P.2d 879 (Alaska 1973).

the witness is a young child."[37] But *McMaster* is readily distinguishable from this case, as are other cases that have condoned relaxing the rule's foundational conditions—such as *Bodine* and *Wassilie*—because they all involved situations in which the disputed witnesses had been available to testify, had actually given meaningful testimony about the offenses at issue, and had subjected themselves to cross-examination on their testimony. Here, by contrast, the witness was excused and declared unavailable without offering any relevant testimony—and, as we discuss further below, this occurred under circumstances in which Vaska's counsel had no reason to believe that the state might later claim that her brief appearance on the stand had testimonial significance under Rule 801(d)(1)(A).

Another important procedural distinction exists here as well. Our opinion in *McMaster* and the court of appeals's opinions in *Bodine* and *Wassilie* reviewed and affirmed decisions in which trial judges exercised their broad powers of discretion to admit evidence that was expressly offered at trial under Rule 801(d)(1)(A). As the court of appeals itself emphasized in deciding *Bodine*, "In determining the sufficiency of the foundation for admission of prior inconsistent statements, the trial court is allowed considerable latitude, particularly where the witness is a young child."[38] By sharp contrast, in Vaska's case, the state raised Rule 801(d)(1)(A) as a theory for admission for the first time on appeal; and the court of appeals declared the disputed evidence admissible not out of deference to trial court discretion exercised in applying this rule, but rather by independently ruling as a matter of law that, despite the lack of a proper foundation, T.E.'s statements were admissible under Rule 801(d)(1)(A).

This ruling is problematic for several reasons. When an offer of evidence presented at trial fails to comply with formal requirements set out in our evidence rules, trial judges commonly exercise broad discretion in deciding whether the offered evidence should be admitted despite its formal lack of compliance, usually basing their decisions in large part on a careful consideration of the precise facts at issue in the case at hand. Because such decisions rely heavily on case-specific factual considerations, they fall squarely within the domain of trial courts, not appellate tribunals, as demonstrated by the fact that appellate review in such cases is typically deferential.[39] After all, an appellate court lacks the trial court's ability to observe witnesses, assess credibility, weigh competing evidence, and resolve disputed facts—all essential tools for fact-based discretion. Accordingly, when foundational facts have not been established and the trial court has never been asked to consider a theory of admissibility freshly raised on appeal, it would seem problematic for an appellate tribunal to resolve the disputed issue by exercising fact-based discretion; yet it seems equally problematic to decide the controversy as if it presented a pure issue of law.

■ We recognize of course that an appellate court ordinarily has broad authority to affirm a trial court's ruling on any legal theory established in the appellate record.[40] But this rule is not absolute. By its own terms, it applies only to issues of law that find support in settled facts. It does not extend to new theories that would normally be resolved by discretionary powers traditionally reserved for trial courts—powers relying on case-specific consideration of disputed or disputable issues of fact.

The rule allowing appellate courts to affirm on any legal theory also must be tempered by the need for procedural fairness. As we have previously indicated, invoking Rule 801(d)(1)(A) for the first time on appeal

---

37. Dissent at 1030–31.

38. *Bodine*, 737 P.2d at 1074.

39. *Crook v. Mortenson–Neal*, 727 P.2d 297, 302 (Alaska 1986) ("On appeal, we defer to [the superior court's] ability to observe the witnesses' demeanor...."); *McMaster*, 512 P.2d at 882–83

("The trial judge should exercise his discretion to see that the testimony is fairly presented to the jury.").

40. *McGee*, 614 P.2d at 805–06 n. 10; *Stordahl*, 564 P.2d at 67 n. 16. The first case to follow this rule was *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961) (citing treatise on federal practice).

raises unique concerns relating to fair notice. Specifically, it would seem fundamentally unfair to apply a legal theory raised for the first time on appeal if a different theory asserted by the prosecution at trial encouraged the defendant to chart a procedural course that might not have been taken if the prosecution's new legal theory had been timely asserted. The circumstances of Vaska's case suggest the potential for this kind of unfairness.

The prosecution ended T.E.'s direct examination and asked to have her declared unavailable without any inquiry into the alleged offense or any effort to lay a proper foundation for admitting her prior statements as prior inconsistent statements under Rule 801(d). Because T.E. had said nothing relevant and the prosecution offered no clue that it might later use her limited direct examination as a foundation to introduce her earlier out-of-court statements, Vaska unsurprisingly declined to cross-examine. The prosecution immediately moved to excuse T.E. as a witness, and the trial court formally excused her. The state then asked the superior court to declare T.E. unavailable under Rule 804(a)(3) because she lacked any relevant memory; at the same time, it asked to admit T.E.'s prior statements under the catchall exception. Despite strenuous objections by Vaska, the superior court granted the state's motions and admitted T.E.'s prior statements under the catchall exception.

On appeal, the state opted to advance a new legal theory, urging the court of appeals to hold that T.E.'s statements would have been admissible as prior inconsistent statements under Rule 801(d)(1)(A)[41]—a ground that the state never mentioned at trial. In accepting this theory, the court of appeals expressed the view that T.E.'s lack of memory did not deprive Vaska of a fair opportunity for cross-examination;[42] the court then ruled that T.E.'s declarations were admissible as prior inconsistent statements.[43]

Yet given the totality of these circumstances, it seems to us that invoking the state's new legal theory for the first time on appeal potentially exposed Vaska to unfair prejudice by undercutting tactical choices he might have made in reliance on the theory of admissibility invoked by the state at trial—the catchall exception. As set out in Evidence Rule 804(b)(5), the catchall exception applies only when (a) the declarant is unable to testify—in other words, is "unavailable" as a witness;[44] (b) no other hearsay exception "specifically cover[s]" the proposed out-of-court statements;[45] and (c) the statements are shown to have "equivalent circumstantial guarantees of trustworthiness" in comparison to specifically covered exceptions—in other words, trustworthiness so strong that adversarial testing through cross-examination would not benefit the defendant.[46] In light of the catchall rule's requirements, when the superior court found T.E.'s statements admissible under this rule, it effectively determined that T.E. had shown herself to be incapable of providing any useful testimony, that her prior statements were not "specifically covered" by any other exception, and that they were so reliable that Vaska had no need to cross-examine her. In short, by accepting the state's theory of admissibility at trial and applying the catchall exception, the superior court effectively told Vaska that there was no real reason to cross-examine T.E.

By contrast, the rule applied on appeal, Evidence Rule 801(d)(1)(A)'s prior-inconsistent-statement provision, requires the declarant to testify and be available for meaningful

---

**41.** *Vaska v. State,* 74 P.3d 225, 227 (Alaska App. 2003).

**42.** *Id.* at 229.

**43.** *Id.* at 228.

**44.** A.R.E. 804(b) (requiring unavailability under A.R.E. 804(a) for hearsay exceptions set out in A.R.E. 804(b)).

**45.** A.R.E. 804(b)(5) (defining catchall provision to apply to "[a] statement not specifically covered by any of the foregoing exceptions").

**46.** *Id.; see also Ryan v. State,* 899 P.2d 1371, 1375 (Alaska App.1995) (quoting *Idaho v. Wright,* 497 U.S. 805, 820–21, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), for the proposition that evidence admitted under catchall exceptions must possess "particularized guarantees of trustworthiness" and be "so trustworthy that adversarial testing would add little to its reliability").

cross-examination. When realistically viewed, the findings required under the state's newly raised theory flatly conflict with the superior court's express finding that T.E. was in fact not available to testify—a finding specifically requested by the state and authorized under Rule 804(a)(3).[47] The court of appeals's conclusion that T.E. was available for meaningful cross-examination also conflicts with the trial court's finding that T.E.'s statements met the guarantee of trustworthiness required under Rule 804(b)(5)—a finding implicitly determining that cross-examination would not provide any meaningful benefit to Vaska.[48]

To be sure, as the state now points out, a finding of unavailability under Rule 804(a)(3) does not necessarily equate to a legal determination that the witness could not have been meaningfully cross-examined in a way that would satisfy the accused's constitutional right of confrontation.[49] But this abstract constitutional distinction begs the practical question at issue here: whether the particular manner in which the state chose to present its case at trial could have influenced Vaska's tactical choices. Here, as already mentioned, the state terminated T.E.'s direct examination at the earliest opportunity, without questioning her about any circumstances relevant to the case at hand and without making any attempt to lay a foundation for introducing her earlier declarations as prior inconsistent statements. The state then immediately asked to have T.E. declared unavailable and simultaneously asked the court to admit her out-of-court statements under the catchall exception.

At no time during the trial did the state do or say anything to suggest that it might later seek to introduce T.E.'s out-of-court state-

ments on a basis that would authorize their admission only if T.E. actually testified and could be meaningfully cross-examined. Given that the state's chosen theory of admissibility at trial did not require T.E. to testify and, indeed, assumed that cross-examination would be unhelpful, the totality of the circumstances could easily have led Vaska's trial counsel to conclude—quite reasonably—that cross-examining her would be pointless, even though under different circumstances asserting that procedural right might have been crucial.

As the state itself recognizes, Vaska's decision to waive cross-examination at trial reflects a tactical choice. Yet despite this recognition, the state ignores the most likely tactical explanation for Vaska's choice: the state's own strategic decision to cut short T.E.'s testimony, have her declared unavailable, and ask that her earlier statements be admitted on grounds wholly unrelated to her ability to appear as a witness at trial or to be meaningfully cross-examined. Theoretically, of course, Vaska remained free to cross-examine T.E.; but as a practical matter, the state's tactical choice gave Vaska no immediate reason to conduct cross-examination, and it suggested no foreseeable reason. Indeed, it appears that the state's most likely purpose in deciding to seek admission at trial under the catchall exception, instead of on alternative grounds that would have required T.E.'s presence, was to spare T.E. from having to face the emotional trauma of cross-examination.[50] From the state's perspective at trial, T.E. had no meaningful testimony to offer, so there was no point in initiating an ongoing dispute over her present ability to testify and be meaningfully cross-examined— a dispute that the state was bound to invite unless it relied on the catchall provision.[51]

---

47. Evidence Rule 804(a) provides: "Unavailability as a witness includes situations in which the declarant ... (3) establishes a lack of memory of the subject matter of [his] statement[.]"

48. See *Ryan*, 899 P.2d at 1375 (quoting *Wright*, 497 U.S. at 820–21, 110 S.Ct. 3139).

49. See, e.g., *United States v. Owens*, 484 U.S. 554, 563–64, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

50. Notably, at Vaska's original trial, T.E. was so terrified of appearing as a witness that she hid under a table in the court building's law library

and could not be convinced to come out, or even to communicate, despite repeated entreaties by the prosecuting attorney. After T.E. was unable to testify, the trial court evidently admitted her out-of-court statements under this court's opinion in *In re T.P.*, 838 P.2d 1236, 1241 (Alaska 1992), which affirmed a trial court decision applying Rule 804(b)(5)'s catchall exception under similar circumstances.

51. As the trial prosecutor acknowledged in asking the superior court to declare T.E. unavailable and admit her testimony under the catchall provision, "[W]hat I am asking to do, rather than

Under these circumstances, it is unrealistic to suggest, as the dissent does, that Vaska's trial counsel had a duty to cross-examine T.E. about her prior statements to her mother, or to call her back for cross-examination, if he wanted to avoid losing Vaska's right to challenge the state's future (but then-unforeseeable) efforts to have T.E.'s statements declared admissible on new grounds. While it might be correct as an abstract legal proposition to say that T.E. was always available and could have been cross-examined, by any practical measure the proposition is hardly convincing.[52]

■ In summary, when the state chooses not to offer evidence under the prior-inconsistent-statement theory at trial, fails to lay a proper foundation for admission under this theory, and relies instead on the catchall exception, its tactical choices could easily lead the accused to reasonably believe that the declarant's testimony and testimonial credibility are not at issue and that no question of inconsistency has been raised; these beliefs may in turn shape the accused's conduct at trial by persuading him that, under the circumstances, the inherent risks of cross-examining the declarant outweigh the

potential benefit. If the state later invokes Rule 801(d)(1)(A) on appeal in a situation like this, we think that the foundational conditions of Rule 801(d)(1)(A) should generally be enforced because of the crucial role they can play in avoiding surprise and unfair prejudice. Considering the totality of the circumstances presented in this case, we are unable to conclude that the state laid an adequate foundation for admitting T.E.'s prior statements to her mother under Rule 801(d)(1)(A).

The dissenting opinion nonetheless reasons that T.E.'s out-of-court statements were alternatively admissible—and may actually have been admitted—as prior identifications under Evidence Rule 801(d)(1)(C).[53] Some comments are in order to explain why we are unpersuaded by the dissent's thoughtful discussion of this theory.

Initially, we note that our own review of the trial transcript leaves us unconvinced that the superior court actually admitted, or even considered admitting, T.E.'s statements as evidence of prior identification. As we read the record, it seems as likely that the trial court admitted them only under the catchall exception, Rule 801(d)(1)(A).[54] But even if we assumed that Judge Funk found

having to—number 1, so we can determine the issue, but number 2, *so it doesn't have to come up every time as—potentially as an objection* is to have [T.E.] declared unavailable under [Rule] 804(a)(3)." (Emphasis added.)

**52.** In this regard, the dissent suggests that, since Vaska never contested T.E.'s lack of memory and now characterizes T.E.'s memory loss as "virtual amnesia," there is no reason to suppose that he would have wanted to cross-examine T.E. Dissent at 1029. But this argument overlooks that Vaska's reason for not contesting T.E.'s lack of memory may well have been precisely the same as his reason for not seeking to cross-examine T.E.: given the prosecutor's reliance on the catchall exception, Vaska's counsel may simply have seen no reason to think that the state would seek to admit Olga E.'s testimony concerning T.E.'s statements on a theory of admissibility that would view T.E.'s pro forma appearance on the stand as a proper foundation for admitting her prior statements as prior *inconsistent* statements. The dissent further maintains that Vaska's counsel must have been aware that T.E. had "testified," because Judge Funk treated her brief appearance as testimony for purposes of admitting Dr. Burgess's report as identification evidence under A.R.E. 801(d)(1)(C). Dissent at 1026, 1032–33. But this argument assumes that Judge

Funk's comments in the colloquy transcribed in the dissent's Appendix meant what the dissent says they meant *and* that Vaska's counsel necessarily would have understood them to have that meaning when they were made. As we explain more fully in note 54 below, neither assumption seems warranted. Moreover, even assuming that the dissent's interpretations of the colloquy in the Appendix were clearly correct, we fail to see how Vaska's counsel's willingness to forgo cross-examining T.E. about statements attributed to her and to her mother in Dr. Burgess's report shows that Vaska's counsel necessarily would have forgone the opportunity for cross-examination had the state tried to lay a timely foundation for admitting Olga E.'s testimony about what T.E. had said on the distinctly different theory that T.E.'s prior statements were prior inconsistent statements.

**53.** Dissent at 1026–27.

**54.** In our view, the record provides ample reason to question the dissent's reading of the superior court's ruling. First, the state never asked to admit T.E.'s prior statements to her mother under Rule 801(d)(1)(C)'s identification provision, or on any other ground besides the catchall exception—the provision that Judge Funk eventually expressly adopted.

T.E.'s statements admissible on this other alternative ground, his ruling would provide no occasion for this court to affirm the court of appeals's decision.

The alternative theories discussed by the dissents have never been raised by the state, addressed by Vaska's counsel, or considered by the court of appeals; they have been proposed only by the dissents. Because adversary briefing serves as the foundation of due process in an appellate forum, it would

hardly seem right for this court to rely on yet another set of alternative legal grounds— grounds that the court of appeals never had an opportunity to consider and that neither party has ever recognized, let alone briefed. Absent briefing on the issue, we are in no position to decide whether T.E.'s statements were inevitably admissible under Rule 801(d)(1)(C) as prior identifications.

We granted Vaska's petition to decide whether the court of appeals correctly af-

Second, the catchall provision applies by its own terms only when an out-of-court statement is "not specifically covered" by another provision. A.R.E. 804(b)(5). It thus seems unlikely that Judge Funk would have ruled the statements admissible under *both* Rule 804(b)(5) and Rule 801(d)(1)(C)—at least not without clearly indicating that his ruling on the catchall exception was a backup rationale.

Third, by requiring circumstantial guarantees of trustworthiness equivalent to those required under the specific exceptions listed in Rule 804(b)(1)-(4), the catchall provision, Rule 804(b)(5), invites courts faced with motions to admit evidence under that provision to consider the issue of trustworthiness by comparing the circumstances surrounding the statement at issue with similar circumstances specifically covered under hearsay provisions that might not strictly apply to the case at hand. Here, Judge Funk's colloquy with trial counsel addressing analogous circumstances covered by other hearsay provisions might simply reflect his understanding that Rule 804(b)(5) required him to find equivalent guarantees of reliability. This would certainly explain why Judge Funk repeatedly discussed the reliability of T.E.'s statements (*see, e.g.*, Dissent, Appendix at 1034: "[T]here's no reason to believe any particular reasons to find that these statements are so unreliable as to be inadmissible."). Such discussion would not have been necessary if the judge had simply meant to rule that T.E.'s statements were specifically covered by the identification provision, since, unlike Rule 804(b)(5)'s provisions governing the catchall exception, Rule 801(d)(1)(C)'s provisions do not make the admission of identification evidence contingent on a finding of circumstantial reliability.

Fourth, Judge Funk had good reason to believe that Rule 801(d)(1)(C)'s identification provision might not specifically cover T.E.'s statements. The identification provision only extends to those narrow portions of a statement comprising the identification itself—it does not allow admission of accompanying statements describing the offense. *See* Commentary to A.R.E. 801(d)(1)(C). Furthermore, as noted by the court of appeals in *Bell v. State*, 716 P.2d 1004, 1006 (Alaska App. 1986), a case that Judge Funk discussed in his colloquy with counsel, the identification provision could be read as being applicable only if "the declarant herself ... testifies to the prior

identification"—a condition that was not met here.

Fifth, it may not be textually accurate to characterize Judge Funk's statements regarding *Bell* and "prior identifications" as a ruling that admitted T.E.'s prior statements to her mother as identification evidence under Rule 801(d)(1)(C). What Judge Funk said was that he would allow "the mother to testify as to the statements that [T.E.] made *concerning* identification of the defendant *and/or concerning* the sexual abuse." Dissent Appendix at 1034–35 (emphasis added). This merely describes what evidence Judge Funk meant to admit; it does not say what legal ground he relied on in deciding to admit it. To view this as a ruling that admitted the disputed evidence under Rule 801(d)(1)(C) overlooks the judge's conspicuous failure to specify that provision as the ground for his ruling. It also overlooks the judge's simultaneous reference to admitting testimony "concerning the sexual abuse"—evidence that could not have been covered by Rule 801(d)(1)(C)'s identification provision.

Finally, the catchall exception was the only exception Judge Funk was ever asked to apply as a basis for admitting the disputed evidence. Immediately after the judge ruled that he would admit evidence of T.E.'s statements concerning identification and sexual abuse, Vaska's counsel asked to complete his argument on the point, and Judge Funk invited him to "[m]ake an offer." Vaska's counsel proceeded to complete his argument, and Judge Funk returned to the one subject he had not yet addressed: the legal ground for his initial decision to admit this evidence. The judge then explicitly stated that he based his ruling on the "broad general exceptions under 804(b)(5)," the catchall provision.

In sum, we think that, when viewed as a whole, the record leaves the dissent's reading of Judge Funk's ruling arguable at best; the ruling is also amenable to an alternative reading: After thoroughly considering the catchall exception's prerequisite of circumstantial trustworthiness in light of other hearsay rules that concerned similar evidence but did not "specifically cover" Vaska's case, Judge Funk found that T.E.'s statements had equivalent trustworthiness to similar evidence routinely admitted under those exceptions, so he admitted her statements under the catchall exception.

firmed on the newly raised legal theory that T.E.'s statements were admissible under the prior inconsistent statement provision, and we have resolved that issue. Our decision on that narrow point does not suggest that the disputed evidence was inadmissible on other legal grounds. To the contrary, it leaves the court of appeals ample room to consider on remand any other alternative legal ground for affirming, including harmless error, so long as both parties have fair notice of the ground and an opportunity to address it, and provided that the ground finds support in the record and can be applied without unfairly altering procedural expectations formed during the trial court proceedings.[55]

## IV. CONCLUSION

For these reasons, we REVERSE the evidentiary ruling of the court of appeals on the limited ground that the rationale adopted by that court was unsound. We REMAND to the court of appeals for further proceedings consistent with this opinion, including further consideration to determine whether T.E.'s statements were admissible on other legal grounds and whether improper admission of the statements would have amounted to harmless error.

CARPENETI, J., dissenting in part.

MATTHEWS, J., with whom
CARPENETI, J., joins in part, dissenting.

---

**55.** The dissent criticizes the "bottom line" of our opinion for "contemplating the possibility of a third trial in this case." Dissent at 1033. But our decision under the prior inconsistent statement rule finds support in decisions from other states reversing convictions in analogous situations. *See State v. Daniels*, 210 Mont. 1, 682 P.2d 173 (1984); *Felix v. State*, 109 Nev. 151, 849 P.2d 220 (1993), superseded on other grounds by rule as stated in *Evans v. State*, 117 Nev. 609, 28 P.3d 498 (2001); *State v. Rohrich*, 132 Wash.2d 472, 939 P.2d 697 (1997). Furthermore, the dissent's concern that our decision "contemplates" a new trial is unfounded. If the court of appeals confirms on remand that the disputed evidence was admissible as identification evidence (as the dissent contends that it is), then no new trial will be needed; the same will be true if it turns out on remand that the evidence was admissible under the catchall exception or some other alternative theory; or that its erroneous admission amounted to harmless error. And of course, if it turns out that the

CARPENETI, Justice, dissenting in part.

I agree with the analysis contained in Part III.B. of today's Opinion, which holds that the state failed to establish a foundation for admitting T.E.'s prior statements under Evidence Rule 801(d)(1)(A). But I do not join the Opinion in this regard, because I do not believe it is necessary to reach this issue in this case. The trial court's decision can and should be affirmed on the grounds on which the trial court admitted the evidence, identification of a person under Evidence Rule 801(d)(1)(C).[1] This is the thesis of Part II of Justice Matthews's dissent, with which I agree. For this reason, I join in Part II of the dissent.

A review of the trial record convinces me that Judge Funk correctly admitted the disputed evidence on the basis of Evidence Rule 801(d)(1)(C). That is a sufficient basis for affirmance. Accordingly, I would affirm Vaska's conviction on the ground that the superior court correctly admitted the disputed evidence.

MATTHEWS, Justice, with whom
CARPENETI, Justice, joins as to part II, dissenting.

Today's opinion holds that because T.E.'s statements to her mother were not offered into evidence as prior inconsistent statements, the court of appeals erred when it

---

evidence was admitted in error and that the error was not harmless, then it is completely beside the point to consider how many prior trials Vaska has had.

**1.** Indeed, we have repeatedly held that we can affirm on any basis supported by the record, even if *not* relied on by the trial court. *See, e.g., Atcherian v. State, Dep't of Revenue, Child Support Enforcement Div.*, 14 P.3d 970, 974 n. 8 (Alaska 2000) ("We may affirm a superior court's decision on any ground that appears in the record."). *See also Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1269 (Alaska 2001) ("[W]e can affirm a grant of summary judgment on alternative grounds, including grounds not advanced by the lower court or the parties. Moreover, we will consider any matter appearing in the record, even if not passed upon by the lower court, in defense of the judgment."). When the trial court specifies a basis for its decision with which we agree, the case for affirmance is even stronger.

held the statements to be admissible on that basis. The opinion acknowledges the rule that an appellate court may affirm a trial court's ruling on grounds other than those relied on by the trial court. But the court holds that this doctrine cannot be relied on in this case because (1) no foundation was established for the admission of the statements on prior inconsistent statement grounds and (2) Vaska might have decided to cross-examine T.E. if he had known that the statements were offered on the ground that they were prior inconsistent statements.

I disagree and would affirm the decision of the court of appeals based on the rationale expressed by the court of appeals. In my view a satisfactory foundation for admission of the statements on prior inconsistent statement grounds was established. Further, affirming on prior inconsistent statement grounds does not result in unfairness to Vaska because he knew the statements were going to be offered and he had an opportunity to cross-examine T.E. concerning them and her lack of memory. In addition, I believe that the trial court also admitted the statements on a separate ground, namely, that they were statements of identification of a person. I would affirm on this basis as well.

I will first discuss the trial court's decision, next the question of admissibility of the statements as statements of identification, and last why I believe that the prior inconsistent statement rationale employed by the court of appeals is correct and justifies affirmance.

## I. The Trial Court's Decision

My first disagreement with the court is based on differences as to what happened at the trial. The court concludes that Judge Funk admitted T.E.'s out-of-court statements under Evidence Rule 804(b)(5), the catch-all exception. Although I acknowledge that the catch-all exception was the basis of the state's offer, it was not the sole basis of the superior court's decision to admit the evidence. Instead, Judge Funk admitted the evidence on two alternative grounds. First, he ruled that Olga E.'s account of her daughter's prior statements was admissible as "prior identifications."[1] Only after this ruling, and without in any way receding from it, did he also rule that the testimony would be allowed under the catch-all exception. In the paragraphs that follow I will explain this in some detail.

Olga and the doctor who examined T.E. testified to several out-of-court statements made by T.E. First, Dr. Burgess, who examined T.E. a few days after the assault, testified that he asked T.E. "who hurt her." She replied: "[M.V.]'s daddy's ga-ga"—which signified that [M.V.]'s father, Vaska, was the perpetrator. Second, Olga testified to four prior statements by T.E. First, she said that T.E. told her that her "girl was hurting," girl being their word for T.E.'s vagina. The second statement was that T.E. said a "ga-ga" had hurt her, a word Olga translated as "monster." Third, prior to Dr. Burgess's examination, Olga testified that T.E. told her that "[M.V.]'s dad hurt her." Fourth, she related how T.E. saw Vaska while she and T.E. were walking in Russian Mission and identified him to her as the "ga-ga."

The admissibility of the doctor's statement is not at issue, because Vaska did not object to it at trial and has not challenged its admission in his petition for hearing. But the doctor's written report was objected to on hearsay grounds. The report included a form child abuse report filled out by Dr. Burgess. This form report is important. It contains T.E.'s statement to Dr. Burgess that "[M.V.]'s daddy's 'gocha' hurt her," and sets out Olga's account of T.E.'s report to Olga of T.E.'s sexual abuse by Vaska. In objecting to the report Vaska's counsel made it clear that his "biggest concern" was paragraph VIII of the form report, which is Olga's account of T.E.'s statements to Olga.[2]

1. I have attached as an appendix the portion of the transcript that contains these rulings. The ruling on prior identification grounds is found at pages 1034–35 of the appendix.

2. The form report sets out T.E.'s statements to Olga as follows:

> Child told mother that her "girl" hurt for four days and mother noted irritation and slight discharge from vagina. She cont'd to complain of pain from that area. Stated that "go-

Initially Judge Funk indicated that the report might come in as a medical record under Evidence Rule 803(4). But defense counsel pointed out that the identification of the perpetrator would not be permitted under that exception. The court found that this observation was well taken, but after further study indicated that the identification made by the child would not be hearsay under Evidence Rule 801(d)(1)(C)[3] if the child testified at trial. In so ruling the court mentioned Rule 801(d)(1)(C) expressly, along with a court of appeals case concerning the rule, *Bell v. State*.[4] At that point the child had not yet testified and the court deferred ruling on the admission of the report.[5]

Subsequently, there was a colloquy on whether Olga's testimony was inadmissible as hearsay, and it was this colloquy that led to the ruling challenged here. The colloquy occurred in the interval after Dr. Burgess and T.E. had testified and before Olga took the stand. Immediately after T.E. was excused, the prosecutor asked that the court declare T.E. "unavailable" under Rule 804(a)(3), so that her out-of court statements could be admitted under the catch-all exception of Rule 804(b)(5). Under Rule 804, a declarant (here T.E.) is unavailable to testify where the declarant "establishes a lack of memory of the subject matter of the declarant's statement."[6] If a declarant is "unavailable" in this way, her out-of-court statements can come in under Rule 804(b)(5) provided the other, somewhat open-ended prerequisites of that rule are also met. In making the offer, the prosecutor said he would be seeking to admit "certain statements made by [T.E.]," so that "it doesn't have to come up every time as—potentially as an objection." The prosecutor noted that statements

made by T.E. could also be admitted under "some other grounds." The prosecutor's offer was thus evidently an effort to save time and avoid numerous objections during Olga's forthcoming testimony; it amounted to an attempt to have Olga's testimony declared admissible in advance. The content of this testimony was familiar to both parties, inasmuch as Olga had testified at the first trial about T.E.'s statements.

In response to this offer (and throughout the colloquy), defense counsel never argued that T.E.'s lack of memory had not been established, or that the court should not declare her unavailable. Instead, after the offer, Judge Funk pointed out that one of T.E.'s out-of-court statements had "[come] in already without objection." This was a reference to Dr. Burgess's testimony. Defense counsel responded—apparently to explain why he did not object to the doctor's testimony—noting that once T.E. testified the doctor's testimony would be admissible under "801" and "my reading of the *Bell* case." The reference to "the *Bell* case" was, again, a reference to *Bell v. State*.[7] In *Bell*, the court stated that even if an out-of-court statement could not come in under an exception for medical diagnoses, the statement might be admissible as a prior identification under 801(d)(1)(C).[8]

As I have noted, *Bell* had already come up in the colloquy over whether to admit the doctor's medical report into evidence, so Judge Funk was familiar with the case. This discussion of *Bell* seemed to prompt the court to conclude that the out-of-court statements to Olga should be admissible as prior identifications under Rule 801(d)(1)(C), even though the state's offer had been based on the catch-all exception of Rule 804(b)(5).

cha" hurt her (monster), then stated [M.V.]'s "gocha" and after further questioning she stated that [M.V.]'s daddy's "gocha" touched her and hurt her.

**3.** Evidence Rule 801(d)(1)(C) provides:
    (d) A statement is not hearsay if
    (1) The declarant testifies at the trial or hearing and the statement is
    . . .
    (C) one of identification of a person made after perceiving the person[.]

**4.** 716 P.2d 1004 (Alaska App.1986).

**5.** After the child testified and the state had presented its last witness the court again took up the question of the admissibility of the report. The court ruled that the report was admissible, particularly that the identifications were permitted under the prior identification theory of *Bell*.

**6.** Alaska R. Evid. 804(a)(3).

**7.** 716 P.2d 1004.

**8.** *Id.* at 1006.

Specifically, both defense counsel and the court recognized that one issue was admissibility under Evidence Rule 801. Defense counsel mentioned the rule explicitly, and the court described the rule by its subject, "prior identifications." After the court stated that one of the child's statements had already come in without objection, the colloquy continued:

> MR. SOBERAY: I understand that because my reading of the *Bell* case was such that unless she testifies—if she doesn't testify then they wouldn't be admissible. If she has testified *under 801*, I think it's admissible.
>
> THE COURT: It appears to me—I mean they're a little ambiguous in the way the Court of Appeals and Judge Singleton's language makes it ambiguous but it appears to the court that if the defendant[9] testifies then, if what it is is an identification. Then *prior identifications* are admissible.
>
> MR. SOBERAY: Right.
>
> THE COURT: And that appears to be what's the issue bef—in this, is a *prior identifications.* . . .

(Emphasis added.) Judge Funk then expanded on this with a statement that seemed to be based not only on Rule 801(d)(1)(C) (prior identifications), but also on a case not previously mentioned by the parties, *Natkong v. State:*[10]

> Under *Natkong v. State,* Alaska App. '96, the court had faced issues where *a lack of memory* or refusal to testify came up and the Court of Appeals affirmed [the] ruling that *prior statements* describing the sexual amus—abuse were admissible. It appears to the court that if you consider that they were statements by a very young girl to

more than one person, that they—or issues of identification, that they were issues involving sexual abuse that there is consistent case law that such *prior statements, prior identifications,* come in. That there's no reason to believe any particular reasons to find that these statements are so unreliable as to be inadmissible. Certainly the extent of such statements and the—are a subject for the weight to be considered by the jury after appropriate cross examination argument. *So the court would allow the mother to testify as to the statements that [T.E.] made concerning identification of the defendant and/or concerning the sexual abuse she suffered at the age that she was at the time.* Do we need anything else at this point.

(Emphasis added.)

*Natkong* construes Rule 801(d)(1)(A), which admits prior inconsistent statements of a witness that would otherwise be hearsay.[11] Judge Funk may have been saying that T.E.'s inability to remember the assault, which the state had said made her "unavailable" for purposes of the catch-all, was also what made her testimony "inconsistent" with her prior out-of-court statement for purposes of Rule 801(d)(1)(A). But this reference to *Natkong* does not clearly show that Judge Funk also relied on a prior inconsistent statement rationale for admitting the evidence for two reasons. First, *Natkong* contains a discussion of the admission on prior identification grounds of statements that a witness has forgotten.[12] Second, *Natkong* contains a sentence that mentions Rule 804(b)(5), the catch-all, as an acceptable "alternative ground" for admitting the out-of-court statement involved there.[13] The important point, in my view, is that this part of

---

9. The court presumably meant "declarant" instead of "defendant" (since all the exceptions of Rule 801(d) apply only if "[t]he declarant testifies").

10. 925 P.2d 672 (Alaska App.1996).

11. Alaska Rule of Evidence 801(d)(1)(A) provides:

> (d) A statement is not hearsay if
> (1) The declarant testifies at the trial or hearing and the statement is

> (A) inconsistent with the declarant's testimony. Unless the interests of justice otherwise require, the prior statement shall be excluded unless
> (i) the witness was so examined while testifying as to give the witness an opportunity to explain or to deny the statement or
> (ii) the witness has not been excused from giving further testimony in the action[.]

12. *Natkong,* 925 P.2d at 678 n. 5.

13. *Id.* at 678.

the colloquy, with its many references to prior identifications, its discussion of the *Bell* case, and counsel's express mention of Rule 801, indicates that the mother's testimony was found admissible because it satisfied the prior identification criteria of Rule 801.

After this ruling, Vaska's lawyer did not object or directly register his disagreement with the court's decision to "allow the mother to testify as to the statements that [T.E.] made concerning identification of the defendant and/or concerning the sexual abuse she suffered at the age that she was at the time." Instead he raised the possibility that the out-of-court statements might be thought admissible under a different hearsay exception, not mentioned by the court or the state—and then he explained why he believed this exception did not apply. More specifically, after the court asked if "we need anything else at this point," defense counsel asked to "just make my argument," even though he said he understood that "the court has ruled." Urged to continue, Vaska's lawyer then cited several cases, among them *Greenway v. State*,[14] discussing the common law hearsay exception for "first reports" of a sexual assault. Although up to this point this exception had not been raised by anyone, the defense argued that the exception should not apply because too much time had supposedly elapsed between the assault and T.E.'s "report."[15]

Judge Funk responded by saying that "[t]he court will still allow" the out-of-court statements. He appeared to appreciate that Vaska was arguing that the first report exception should not apply, but did not, at least not clearly, address this exception. Instead he said that any delay in reporting the assault was irrelevant, because "it's not just a

witness talking about a prior event, but it is someone *identifying* a defendant as causing an injury, it is a specific *prior statement* about sex abuse." (Emphasis added.) This again suggests a reliance on the prior identification. But then, right at the end, Judge Funk concluded in a way that suggested he thought the out-of-court statements in the mother's testimony were admissible under Rule 804(b)(5), the catch-all exception initially raised by the state. Specifically, the court said that the time lag was not a "sufficient basis, given broad general exceptions under 804(b)(5)" to exclude the "testimony by the mother of statements made ... by her daughter, concerning this incident." On this note, the colloquy came to a close. Defense counsel made a "continuing objection" to Olga's testimony "so as to not interrupt" that testimony, which the court acknowledged, and then Olga was called to the stand.

Putting aside for a moment whether the decision to admit the evidence was erroneous, I draw two conclusions from this colloquy.

First, Judge Funk's initial ruling—the one in which he discussed *Bell* and made numerous references to "prior identifications"— must be evaluated on review. This is the clearest statement of the court's rationale, and unlike the somewhat haphazard response to Vaska's "first report" argument, it was clearly based on independent research and some forethought. This first ruling was based at least in part on Rule 801(d)(1)(C), the prior identification rule. This is seen in the court's (and defense counsel's) references to *Bell*, in the court's repeated characterization of T.E.'s statements as "prior identifications," and in defense counsel's reference to Rule 801.[16] When evidence is admitted on

---

14. 626 P.2d 1060 (Alaska 1980).

15. This argument was based on the fact that the indictment said the assault occurred in "spring," which begins in March, whereas T.E. first reported the crime in May, suggesting a gap of perhaps a month and a half. But the evidence at trial established that T.E. reported the assault only a few days after it occurred.

16. It is not uncommon for courts to admit, and approve the admission of, evidence on more than one basis, even when one of the grounds for admission is the catch-all ground expressed in

Rule 804(b)(5). Judge Funk would have understood this because one such case is *Natkong v. State*, 925 P.2d 672 (Alaska App.1996), which he referred to in his ruling. Another is *Dezarn v. State*, 832 P.2d 589, 590 (Alaska App.1992) (discussed in footnote 17). Courts elsewhere are in accord. *See, e.g., State v. Robinson*, 699 N.W.2d 790 (Minn.App.2005) (Subsequently recanted statements by victim to nurse were offered as statements of identification or, alternatively, under the medical diagnosis and catch-all exceptions to the hearsay rule. Trial court admitted them under the medical diagnosis exception. On

two or more grounds, one of which has been correctly applied and justifies the admission, admitting the statement is not grounds for reversal.[17]

Second, it should be clear that insofar as Judge Funk relied on the "catch-all" ground under Rule 804(b)(5), this ruling was based on T.E.'s "unavailability," which in turn was based on her apparent inability to remember the assault and her statements concerning it. Vaska never contested her lack of memory, and does not do so on appeal. He states, without sarcasm, in his reply brief that "T.E.'s memory loss amounted to virtual amnesia. . . ."

## II. The Trial Court's Decision on Prior Identification Grounds Was Not Erroneous.

It seems clear to me that T.E.'s out-of-court statements were admissible as state-

ments of "identification of a person made after perceiving the person" under subpart (C) of Rule 801(d)(1). T.E. told her mother prior to Dr. Burgess's examination but after T.E.'s report of vaginal irritation that "[M.V.]'s dad [Vaska] hurt her." In addition, sometime later while walking in Russian Mission with Olga, T.E. identified Vaska as the "ga-ga," or perpetrator of the assault. These identifications by T.E. readily fall within the literal language of the rule and authoritative interpretations of it.[18] [19]

## III. The Court of Appeals Correctly Affirmed on Prior Inconsistent Statement Grounds.

In my opinion the court of appeals correctly ruled that T.E.'s statements to Olga were admissible as prior inconsistent statements under Rule 801(d)(1)(A). As I explain in the discussion that follows, an adequate founda-

appeal, statements were held not admissible under the medical diagnosis exception but they were admissible as statements of identification and under the catch-all exceptions.); *United States v. Obayagbona*, 627 F.Supp. 329, 339–41 (E.D.N.Y.1985) (Statement admissible under three specific exceptions to the hearsay rule as well as under the catch-all. The trial judge, Judge Weinstein, an eminent evidence expert, observed that the guarantee of trustworthiness required by the catch-all provision "has already been demonstrated in the discussion of [the specific hearsay exceptions under which the evidence was also admissible].").

17.  *See, e.g., Dezarn*, 832 P.2d at 590 (Testimony was admitted both as an excited utterance under Alaska Evidence Rule 803(2) and under the residual hearsay exception of Alaska Evidence Rule 804(b)(5). The court of appeals upheld the admission as an excited utterance and concluded that because the statement "was admissible under Evidence Rule 803(2), we need not reach [the superior court's] alternative ruling that [the] statement was also admissible under Evidence Rule 804(b)(5).").

18.  *See, e.g., Buchanan v. State*, 554 P.2d 1153, 1158 (Alaska 1976), a case foreshadowing and suggesting the adoption of the prior identification exception so that "witness A may testify as to witness B's extra-judicial identification if the circumstances surrounding the prior identification were not such as to render it unfair or unreliable, and witness B is available for cross-examination." *See also, e.g., United States v. Brink*, 39 F.3d 419, 426 (3d Cir.1994) ("Generally, evidence is admitted under Evidence Rule 801(d)(1)(C) when a witness has identified the

defendant . . . but forgets, or changes, his testimony at trial."); Commentary, Alaska R. Evid. 801(d)(1)(C) ("An early, out-of-court identification provides fairness to defendants by ensuring accuracy of the identification. At the same time, it aids the government by making sure that delays in the criminal justice system do not lead to cases falling through because the witness can no longer recall the identity of the person he saw commit the crime. . . . *Accord, Buchanan v. State*, 554 P.2d 1153, 1158 (Alaska 1976)."). I note also that under *Buchanan* a case-by-case review of the circumstances surrounding the prior identification for reliability is appropriate.

19.  In deference to the position of my colleagues, I am willing to assume for purposes of discussion that Judge Funk's ruling that he "would allow the mother to testify as to the statements that [T.E.] made concerning identification" indicated not that he was admitting the mother's testimony directly as a prior identification but instead that because he viewed the testimony as equivalent in trustworthiness to a prior identification, he was admitting it under the catch-all exception. If so, it seems to me that the question of admissibility would be put to rest by deciding that admission on prior identification grounds would have been proper. It should be easier, not more difficult, to admit evidence that satisfies a direct hearsay exception on the basis of the particular exception rather than under the multi-factored catch-all rule. And unlike the prior inconsistent statement basis in the present case, there are no arguably unmet foundational rules in connection with the statement of identification ground. All that is required is an identification and that the declarant testify.

tion for admitting the statements was established and no unfairness resulted from the fact that the statements were not explicitly admitted as prior inconsistent statements.

When a witness claims at trial that she does not remember the substance of a prior statement, the prior statement is considered to be inconsistent with the witness's testimony and it may be admitted as a nonhearsay statement under Evidence Rule 801(d)(1)(A).[20]

Today's opinion treats lack of memory of a statement as a necessary foundational condition for admission of a statement as a prior inconsistent statement.[21] In the second trial of this case T.E., then in the fourth grade, testified that she could not remember events when she was a "little tiny girl," could not remember being in the first grade, and indeed could not remember anything before the third grade.[22] The abuse that T.E. suffered, and her statements concerning it, occurred when she was three years old. In my view her testimony was sufficient to establish that she did not remember either the abuse or the statements, since she said that she remembered nothing at all about that period of her life. Thus it seems to me that the first foundational requirement for the admission of statements that the witness has forgotten making—lack of memory—was satisfied.

But the opinion of the court contends that, as a second foundational requirement, T.E. should have been given an opportunity to explain or deny the statements that she made when she was three years old.[23] Normally, of course, the only explanation for not remembering making a statement is just

that, not remembering making the statement. Where the witness is an adult, it does no harm to make a further inquiry, but in the case of a young and frightened child, conducting an examination seeking some other explanation for unremembered statements would typically be both confusing and futile.[24]

The purposes of the opportunity to explain requirement are "to avoid unfair surprise to the adversary; to save time, since an admission by the witness may make extrinsic proof unnecessary; and to give the witness a fair chance to explain the discrepancy."[25] In this case considerations of fairness to the witness are not of concern because T.E. was not unfairly treated. Likewise, the time-saving purpose of the requirement is not implicated because the truth of T.E.'s lack of memory is not contested and because it would be an untenable irony to conclude that the possibility of avoiding delay could be a reason justifying reversing a jury verdict and requiring a new trial. In theory, the first purpose of the requirement—avoiding surprise to the adversary—might well be a significant factor. But here it was not because this case had already been tried. Vaska knew the substance of Olga's impending testimony.[26] Thus, under the facts of this case, none of the values sought to be advanced by the opportunity to explain foundational requirement would be prejudiced by not adhering to it.

Case law in Alaska counsels that the opportunity to explain requirement is distinctly optional where the witness is a young child. The leading case is *McMaster v. State*.[27] McMaster was accused of shooting her husband. The couple's five year-old daughter

---

**20.** *See Wassilie v. State,* 57 P.3d 719, 722–23 (Alaska App.2002) (reviewing federal cases).

**21.** *See* 135 P.3d at 1015–17.

**22.** *See* the excerpt of the transcript quoted in the opinion of the court at pages 1013 and 1014 *supra.*

**23.** 135 P.3d at 1015–17; the opportunity to explain requirement is expressed in Evidence Rule 801(d)(1)(A)(i) set out *supra* at note 11.

**24.** At the first trial T.E. was so frightened that, according to Vaska, "she hid from the prosecutor

and the judge and refused to come out from under a desk...."

**25.** McCormick on Evidence § 37 at 133 (5th ed.1999).

**26.** At the first trial T.E.'s statements to Olga identifying Vaska as the person who had abused her that were made before the visit to Dr. Burgess were admitted without objection. T.E.'s later identification of Vaska during the walk in the village was elicited by Vaska's counsel on recross-examination.

**27.** 512 P.2d 879 (Alaska 1973).

testified that the father shot himself.[28] The state put a family friend on the stand, who testified that the daughter told him after the shooting that "she saw her mommy shoot her daddy." [29] Over objection, the state sought to admit this testimony under the predecessor to Rule 801(d)(1)(A), which had a substantially similar opportunity to explain requirement. The child had not been asked about the prior statement and it was offered after she had already testified. Nonetheless, this court upheld the admission of the statement. We observed that commentators on the law of evidence generally supported flexibility with respect to the opportunity to explain requirement, including dispensing with it altogether "if it seems fairer to do so." [30] We noted that this relaxed approach was advocated in the case of adult witnesses "without direct reflection on the other crucial problem in this case: the fact the witness in question was only five years old." [31] In cases involving young children we indicated that there were even greater reasons not to insist on a mechanical application of this foundational requirement: "This is particularly true when the court is dealing with the testimony of a child of tender years." [32] Since *McMaster*, in every case in which the failure to adhere to the opportunity to explain requirement has been raised in cases involving young children, Alaska appellate courts have either approved dispensing with the requirement or have found incomplete compliance to be sufficient.[33]

Based on the above discussion, I conclude that of the two foundational requirements found wanting by today's opinion, the first, lack of memory, was satisfied. The second, opportunity to explain, would not properly have been required in this case because any attempt to satisfy it would likely have been futile, none of the values sought to be advanced by the requirement were lost by dispensing with it, and case law suggests that it need not be applied to children of tender years.[34]

28. *Id.* at 882.

29. *Id.* at 880.

30. *Id.* at 883 (quoting McCORMICK LAW OF EVIDENCE § 37 at 70 (1954)).

31. *Id.*

32. *Id.* at 882.

33. *See, e.g., Richards v. State*, 616 P.2d 870, 871–72 (Alaska 1980). ("When Lonnie testified at trial that he had forgotten much of what he had seen that night, the tape was admissible as a prior inconsistent statement. And under *McMaster* the prosecution was not required to allow Lonnie to explain his inconsistent statement before introducing it, because of his young age.") (citations omitted); *Bodine v. State*, 737 P.2d 1072, 1075 (Alaska App.1987) (general questions found to be sufficient compliance since "[i]n determining the sufficiency of the foundation for admission of prior inconsistent statements, the trial court is allowed considerable latitude, particularly where the witness is a young child."); *Yatchmenoff v. State*, Mem. Op. & J. No. 4717, 2003 WL 21350242 (Alaska App., June 11, 2003) (child was confronted with several but not all of the inconsistent statements that were admitted; noting the generally fruitless result of the confrontation the court held that the superior court had not abused its discretion in finding that an adequate foundation had been laid); *accord Wassilie*, 57 P.3d at 722 (where prosecution sought to introduce elderly witness's prior statement after witness had been excused, prior statement was properly admitted even though the witness was not asked about his prior statement or requested to explain or deny it, because witness was confused and further testimony was not apt to be useful).

34. In addition, since none of the purposes of the opportunity to explain requirement would have been advanced by adhering to it in this case, any complaint by Vaska that it should have been followed falls within the realm of harmless error. Civil Rule 61 teaches that courts "at every stage of the proceeding must disregard any error or defect in the procedure which does not affect the substantial rights of the parties." Today's opinion suggests that a substantial right, namely a defendant's "right to rely on the State's burden of proof in a criminal case," is affected when the opportunity to explain requirement is not followed. 135 P.3d at 1017. I do not agree. The burden of proof at all times remains with the state regardless of whether or not the opportunity to explain requirement is followed. The suggestion to the contrary by the court would make the explicit alternatives to the opportunity to explain requirement that are built into the rule— 801(d)(1)(A)(ii) (witness not excused from giving further testimony) and the interests of justice exception—dead letters in criminal cases; it is also inconsistent with *McMaster*. Today's opinion also suggests that the opportunity to explain requirement is necessary to protect a defendant's "rights to effective confrontation and cross-examination." 135 P.3d at 1017 (citing *United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988)). *Owens* held that

But the question remains whether it was unfair to rule on appeal that the evidence would have been admissible on prior inconsistent statement grounds given that it was actually offered under the catch-all exception contained in Evidence Rule 804(b)(5). I do not think that there was any unfairness, primarily because admission of the evidence under either theory was predicated on T.E.'s lack of memory which Vaska decided not to challenge.

The basis for invoking the catch-all exception is unavailability of a witness due to lack of memory. Under Evidence Rule 804(a)(1) a witness is said to be unavailable when the witness "establishes a lack of memory of the subject matter of the [witness's] statement." As already noted, Vaska did not oppose the state's offer of unavailability on the ground of T.E.'s lack of memory. If he had wished he could have requested that T.E. be recalled to the stand for cross-examination as to her lack of memory on the subject matter of the

statements that he knew were about to be offered.[35] T.E.'s lack of memory would also have been the foundational basis for admission of her statements on prior inconsistent statement grounds. Since Vaska chose not to cross-examine T.E. concerning her lack of memory when it formed the predicate for admission of her statements under Rule 804(b)(5), there is no reason to think that he would have done so if her lack of memory had formed the predicate for the admissibility of her statements under Rule 801(d)(1)(A).[36]

Moreover, at the time that T.E. testified the question of the admission of Dr. Burgess's written child abuse report was still pending. Judge Funk had already indicated that the report might be admissible under Evidence Rule 801(d)(1)(C) as a statement of identification if T.E. testified but, as T.E. had not yet testified, he had deferred ruling on the admission of the report. Vaska's counsel, of course, knew T.E.'s testimony was the

---

the confrontation clause is not violated by the admission of an out-of-court identification made by a witness who suffers from memory loss at trial. The Court held that an opportunity to cross-examine a forgetful witness satisfies the confrontation clause: "The confrontation clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish." *Id.* at 559. *Owens* does not state that the opportunity to explain requirement serves vital purposes in protecting rights to effective confrontation and cross-examination. In fact, the opinion does not mention the opportunity to explain requirement by name nor does it refer to the Federal Evidence Rule that includes the requirement, F.R.C.P. 613(b) (relating to use of prior statements for impeachment purposes).

**35.** The opponent of evidence offered based on a claim of unavailability of a witness arising from the witness's loss of memory may cross-examine the witness. McCormick on Evidence § 253 at 128 (5th ed.1999). If the witness's forgetfulness is only partial we have suggested that resort both to present testimony, to the extent of recollection, and hearsay would be appropriate. *In re T.P.*, 838 P.2d 1236, 1240 n. 7 (Alaska 1992).

**36.** A defendant's right to cross-examine a witness whose statement is admitted on inconsistent statement grounds because the witness does not remember making the statement is not regarded as meaningless in a constitutional sense. As the court of appeals noted in this case, quoting Justice Harlan's concurring opinion in *California v.*

*Green*, 399 U.S. 149, 188–89, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), which subsequently was adopted by the Court in *Owens*, 484 U.S. at 558, 108 S.Ct. 838:

The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequences. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available. To the extent that the witness is, in a practical sense, unavailable for cross-examination on the relevant facts, for reasons stated [previously], I think confrontation is nonetheless satisfied.

*Vaska v. State*, 74 P.3d 225, 229 (Alaska App. 2003). Today's opinion seems to agree with this statement. 135 P.3d at 1020–21. This is a matter of significance because the question initially presented by Vaska in his petition for hearing to this court (before the scope of the petition was expanded by this court's direction to brief additional issues) was whether the court of appeals had erred in its reliance on *Owens* in preference to *Van Hatten v. State*, 666 P.2d 1047 (Alaska App.1983). In *Van Hatten* the court of appeals rejected the general formula advocated by Justice Harlan in his concurring opinion in *Green*. *Van Hatten*, of course, was decided before Justice Harlan's rationale was adopted by the opinion of the Court in *Owens*. The state argues, and I agree, that this aspect of *Van Hatten* "appears to be out of step with current law."

predicate for admissibility of the child abuse report on prior identification grounds. The purpose of requiring a witness to testify before a statement of identification may be admitted under Evidence Rule 801(d)(1)(C) is so that the opponent of the evidence may question the witness about the statement she has reportedly made.[37] Vaska's counsel thus knew that T.E.'s testimony opened the door for admission of the report containing T.E.'s statements to her mother, and that he had an opportunity to cross-examine her concerning it, yet he chose not to take advantage of this opportunity.[38] Again, this points to the conclusion that Vaska likewise would have declined to cross-examine T.E. if T.E.'s statements to her mother had been offered on prior inconsistent statement grounds.

In summary, because T.E.'s lack of memory concerning her prior statements would be the predicate for admitting them under either the catch-all exception or as prior inconsistent statements, Vaska's failure to seek cross-examination of her when the evidence was being offered under the former theory demonstrates that he would have done nothing different if the evidence had been introduced under the latter theory. This is underlined by the fact that while Vaska knew that the written account of the most damning statement that T.E. had made to Olga was pending admission as a prior identification, he still declined to exercise his right of cross-examination.

The bottom line is that the court is contemplating the possibility of a third trial in this case,[39] ostensibly to give Vaska an opportunity to ask T.E. about the assault and her statements concerning it—even though Vaska conceded that T.E. has no memory of these matters, and even though Vaska had an opportunity to cross-examine T.E. about her lack of memory of the subject matter of her statements at a time when he knew the statements were about to be offered, yet showed no interest in doing so. I do not see what unfairness would be remedied by giving Vaska another trial.

## IV.  Conclusion

For these reasons I would affirm the decision of the court of appeals.

### APPENDIX

THE COURT:  You can leave now, that's the end of your testimony ma'am.

(Witness excused)

THE COURT:  Mr. Olson, your next witness?

MR. OLSON:  I—you could just wait right outside.  If we could approach?

THE COURT:  Certainly.

(Bench conference as follows:)

(Whispered conversation)

MR. OLSON:  (Indiscernible—away from microphone).

---

37.  *See Buchanan v. State*, 554 P.2d 1153 (Alaska 1976).  In *Buchanan* this court suggested adopting a new exception to the hearsay rule that became the prior identification rule expressed in Evidence Rule 801(d)(1)(C).  We stated:

> Although we do not decide the question at this time, we also think there is considerable merit in the state's argument that a new exception to the hearsay rule should be recognized.  The state contends that witness A may testify as to witness B's extrajudicial identification if the circumstances surrounding the prior identification were not such as to render it unfair or unreliable, and witness B is available for cross-examination.  Professor Wigmore supports such a rule as do a large number of courts, both on the basis of the reliability of such evidence and because cross-examination is readily available.  *If the rationale behind the hearsay rule is that the declarant cannot be*

> *cross-examined and cannot be observed by the trier of fact, such rationale is inapplicable when the person actually making the identification is available at trial.*

*Id.* at 1157–58 (footnotes omitted) (emphasis added).

38.  I do not question the soundness of this tactical decision.  I suspect that most trial attorneys would have concluded that the possible risks involved in cross-examining T.E. far outweighed any benefits that might have been gained.  Likewise, I do not suggest that Vaska had a duty to cross-examine T.E. *Contra* 135 P.3d at 1021–22.

39.  Whether a third trial takes place depends on the court of appeals' resolution on remand of the questions whether Olga's account of T.E.'s statements was admissible on grounds other than prior inconsistent statement grounds and whether any error was harmless.

THE COURT: Well, I mean, as to what? As to the next witnesses' testimony?

(Whispered conversation)

THE COURT: Should we discuss this?

(Whispered conversation)

THE COURT: You'd like to discuss this for a while?

(Whispered conversation)

THE COURT: All right.

(End of bench conference)

THE COURT: We're going to need to send you back to the jury room for a little bit to discuss this—a legal question. So, even though you've only been here a short while, we'll send you back, we'll get you back in here as soon as we can. Thank you very much.

(Pause)

THE COURT: Mr. Olson? The jury is not present.

MR. OLSON: Your Honor, what I am asking to do, rather than having to—number 1, so we can determine the issue but number 2, so it doesn't have to come up every time as—potentially as an objection is to have [T.E.] declared unavailable under 804(a)(3).

THE COURT: And under 804(a)(3) unavailability of witness includes situations in which the declarant establishes a lack of memory of the subject matter of his statement. And.....

MR. OLSON: Then I'd, among other things, there's some other exceptions but I'd be asking that certain statements made by [T.E.] be admitted under 804(b)(5).

THE COURT: Which is the catchall?

MR. OLSON: That's correct. And I'm just doing it as an abundance of caution, Your Honor. This wasn't—although the youth—wha—the—my—the young girl was unavailable in the last trial, she was actually physically hiding underneath a table in the library. So physically couldn't come in but all the statements had—were admitted before but I just want to establish this and there are some other grounds for admitting certain statements.

THE COURT: Mr. Soberay?

MR. SOBERAY: Well, if we have the jury out now, I.....

THE COURT: I'm sorry, I didn't understand the last statement.

MR. SOBERAY: Well, if the jury is out right now, I guess what the prosecution is asking is for the court to rule not on the availability or unavailability of a witness but to go further and determine whether or not the out of court statements by [T.E.] would be admissible.

THE COURT: Well, one come—came in already without objection.

MR. SOBERAY: I understand that because my reading of the *Bell* case was such that unless she testifies—if she doesn't testify then they wouldn't be admissible. If she has testified under 801, I think it's admissible.

THE COURT: It appears to me—I mean they're a little ambiguous in the way the Court of Appeals and Judge Singleton's language makes it ambiguous but it appears to the court that if the defendant testifies then, if what it is is an identification. Then prior identifications are admissible.

MR. SOBERAY: Right.

THE COURT: And that appears to be what's the issue bef—in this, is a prior identifications. Under *Natkong v. State*, Alaska App. '96, the court had faced issues where a lack of memory or refusal to testify came up and the Court of Appeals affirmed Judge Carpeneti's ruling that prior statements describing the sexual amus—abuse were admissible. It appears to the court that if you consider that they were statements by a very young girl to more than one person, that they—or issues of identification, that they were issues involving sexual abuse that there is consistent case law that such prior statements, prior identifications, come in. That there's no reason to believe any particular reasons to find that these statements are so unreliable as to be inadmissible. Certainly the extent of such statements and the—are a subject for the weight to be considered by the jury after appropriate cross examination argument. So the court would allow the

mother to testify as to the statements that [T.E.] made concerning identification of the defendant and/or concerning the sexual abuse she suffered at the age that she was at at the time. Do we need anything else at this point.

MR. SOBERAY: Can I just make my argument.....

THE COURT: Certainly.

MR. SOBERAY: .....regarding that, Your Honor? And I understand the court has ruled, I'm—just maybe.....

THE COURT: Make an offer of proof, you bet.

MR. SOBERAY: Well, essentially, Your Honor.....

THE COURT: There's (indiscernible) to be a ruling.

MR. SOBERAY: Well, essentially, Your Honor, I think we all know from the previous trial and we would—we'd expect that the testimony would be rather consistent with what had previously been testified. So that—that's the proffer of what essentially is—think the testimony is going to be. But there is case law that goes back to—well, the 1970's. I think it started with *Torres versus State* at 519, 788 where there was an exception for sex crimes and the first reporting of abuse or assault. But there were cases—a litteny of cases after that that sort of homed in on, you know, what it was that was so reliable about this first reporting exception. And what they basically said is, you know, the courts found that it to be reliable based on the fact that it was the first reporting and then they started getting into issues of how much time had passed. And there was one case that's—that was cited in *Greenway* in 1980—*Greenway versus State*, which was at 626, 1060—626 P.2d 1060, a Supreme Court from 1980 where they cited another case, *State versus Twyford[,* 85 S.D. 522, 186 N.W.2d 545 (1971)], T-w-y-f-o-r-d, which was a case out of South Dakota from 1971 where they said a delay of over two months not reason to exclude testimony since victim was only 12 years old.

The problem that we have here is we don't know when this all—when this is supposed to have happened. The only thing that we have is the spring of 1994 is what's alleged in the indictment. So if the spring of 1994 started in—March 20th and this is being reported in—May 6th or early May, then the question becomes is that such a long delay that we now get into the considerations that *Greenway* talked about in saying that delays reduce that indicia of reliability. And I don't have any case law and I don't think that any court is going to say it's got to be two weeks or four weeks—I don't think there's anything like that, I think it's a judgment call. So, we don't know exactly when, and I don't think anybody is going to tell us, but I think the court could glean some information from the doctor's testimony and that would suggest that some healing had taken place and that there had to be some length of time and so if that's the case, that—that's basically my argument. We just don't know—it's just there's no nexus between when it occurred and when the reporting is done and your indicia of reliability is substantially reduced and therefore it would be unfair to admit the statements.

THE COURT: The court will still allow it. The court accepts that what the argument that's being asserted is is that certainly on issues of reliability, newness of the event to the time of report, especially when dealing with adults increases the level of reliability. And clearly in this case, we—we're dealing with a very young child whose ability to carefully discern dates, if we had them, would be difficult to find reliable. In this case we don't have any but the court, given the number of cases that find because it's not just a witness talking about a prior event, but it is someone identifying a defendant as causing an injury, it is a specific prior statement about sex abuse, it is one where the person testifying is of such young age that these are always problematic.

The court doesn't find that a sufficient basis, given broad general exceptions under 804(b)(5), the court finds in its discretion that given the evidence presented to date and the review of the court file that the offer of proof is such that the court believes that testimony

by the mother of statements made by her, by her daughter, concerning this incident will be admissible. Anything further at this time?

MR. SOBERAY: No, Your Honor.

THE COURT: So we're ready to—why don't we call her in and get her in and situated.

MR. SOBERAY: Your Honor, so as not to interrupt, may I have a continuing objection.

THE COURT: And—absolutely. And there will be a continuing objection. I'd much prefer to make sure that's clear on the record so I don't have to—you don't feel compelled to keep jumping up and down.

MR. SOBERAY: Yes, sir.

THE COURT: Mr. Vaska, that means that your attorney—the court respects and has admitted for the record that your attorney, if I didn't say there was continuing objection, would want to object to each and every question and I'd say overruled and not to have that happen, I've just—he has just said that he's going to continue to object to the court's ruling and that I have noted that for the record and I've denied all of those objections now to all the questions. Okay?